JAMES H. LOUGHLIN *vs.* WRIGHT MACHINE COMPANY.

Worcester.    September 24, 1930. — November 26, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Trespass. Equity Jurisdiction,* To enjoin continuing trespass, Damages.

A. master in a suit in equity commenced in 1928 found that, in a conveyance of a tract of land previous to 1870, the grantor reserved a strip six inches in width along the northeast side; that two ways crossed the tract in a northeasterly direction, terminating at the six-inch strip; that in deeds given subsequent to 1889 the land adjacent to the tract on the northeast, subsequently conveyed to the defendant, was bounded on the southwest by the tract and the two ways, with no mention of the strip; that in 1911 and 1915 a predecessor in title of the defendant installed two sewers from his land across the strip to connect with public sewers in the ways; that the plaintiff, who had lived on the tract until 1911, knew of the installation of the sewers, but did not, then or thereafter, protest to the defendant's predecessor or to the defendant against the installation or subsequent use of the sewers; that the plaintiff never gave permission for the maintenance thereof; that neither the defendant nor his predecessors in title had knowledge, at the time of the installation of the sewers, of the reservation of the strip; that the plaintiff acquired title to the strip in 1927; that there was no beneficial use to which the plaintiff could put the strip; that the maintenance of the sewers under the strip by the defendant did not interfere with the use of the surface thereof by the plaintiff; and that it would cost the defendant $1,700 to install proper sewers. The plaintiff sought to have the defendant ordered to remove the sewers from the strip and to restore it to its original condition. A final decree granting the relief sought was entered. On appeal by the defendant, it was *held,* that

(1) On the facts found, the relief sought should not have been granted;

(2) The decree was modified by striking out the order for the removal of the sewers, and in lieu thereof the defendant was to pay the plaintiff $1 as nominal damages, such assessment and payment not to prejudice the right of the plaintiff to recover further damages from the defendant whenever the maintenance of the sewers under the strip should interfere with the plaintiff's beneficial use of it.

Upon further findings by the master in the suit in equity above described, that the defendant maintained a factory on his land and that employees of the defendant and persons going to the factory on business

crossed back and forth over the strip, it was proper to grant the plaintiff relief by way of an injunction permanently restraining the defendant, his agents, servants, employees, licensees and invitees from trespassing on the strip.

BILL IN EQUITY, filed in the Superior Court on February 9, 1928, and subsequently amended, described in the opinion.

The suit was referred to a master, material facts found by whom are stated in the opinion. The following sketch, not drawn to scale, shows the material portions of a plan included in the record.

## WRIGHT   MACHINE   Co.

By order of *Whiting*, J., there were entered an interlocutory decree confirming the master's report and a final decree as follows:

"1. That the defendant, its agents, servants, employees, licensees and invitees, be permanently enjoined from enter-

ing or trespassing on the premises of the plaintiff . . . [the six inch strip of land].

"2. That the defendant, from and after the expiration of ninety days from the date of this decree, refrain from emptying or discharging or permitting to be emptied or discharged in, onto or through . . . [such] premises . . . any sewage or drainage.

"3. That the defendant, within ninety days from the date of this decree, remove the sewers or drain pipes in . . . [such] land . . . and restore those portions of the surface of said premises excavated to the same condition they were in prior to the removal of said sewers or drains.

"4. That costs be taxed in favor of the plaintiff in the sum of $23.75 and execution issued therefor."

*A. S. Houghton,* for the defendant.

*E. Zaeder,* for the plaintiff, submitted a brief.

PIERCE, J. This is a bill in equity to compel the removal by the defendant of a certain fence and foundation thereto, and certain sewers, upon land of the plaintiff, and to restrain the defendant from trespassing upon the plaintiff's land. Upon the filing of the answer the case was referred to a master who duly filed his report. No objections or exceptions were taken to the report and it was confirmed by an interlocutory decree from which neither party appealed. The case comes to this court on the appeal of the defendant from a final decree for the plaintiff.

The report discloses that in 1866 a tract of land in the rear of Grand Street, in the city of Worcester, six inches in width, along the most northeasterly lines of lots numbered thirty-nine, forty, forty-seven and fifty-two and the most northeasterly lines of Carson Court and Grand Street Court as shown on a plan of "House Lots" belonging to Eli Goulding, was "reserved" out of the Goulding land, as the lots above enumerated were sold in 1866, 1867 and 1869. Lots forty-six, forty-seven and fifty-two as shown on the plan were bounded respectively on the northwest and southeast by Carson Court. In 1869, these lots were conveyed to Michael Loughlin, the

father of the plaintiff, by a description which referred simply to the lot numbers on the plan and the area of the lot, with the following reservation: " The grantor reserves to herself a strip of land six inches wide on the north side of said lot for the purpose of controlling said Court." The plaintiff was born on the property owned by his father and lived there until 1911. Michael Loughlin died in 1910. The plaintiff was administrator of his estate, had general charge of the real estate on Carson Court and, as heir at law, had an individual sixth interest in it. So far as the record shows he has no legal interest in Grand Street Court. In 1927, the Goulding heirs conveyed this six-inch strip of land to the plaintiff, who, because he thought he could build on Carson Court between the lots on either side formerly owned by his father if he could get a release from the other owners on this court, purchased this six-inch strip for the purpose of controlling Carson Court and preventing the use of it by the defendant.

Prior to 1911 the city of Worcester installed a public sewer in Grand Street Court, and prior to 1915 installed a public sewer in Carson Court. Several houses have stood on both sides of Grand Street Court and of Carson Court and these courts have been piped with city water for the past forty years.

Since 1889 all conveyances to the defendant and its predecessors in title are bounded on land of Troy (lots thirty-eight, thirty-nine), Grand Street Court, land of Gardner, Carson Court and land of Loughlin, with no mention of the six-inch strip reserved by Goulding. Since 1911 the defendant has maintained on its premises a factory building about seven feet from its westerly boundary line, and another building facing on the land of the Norwich and Worcester Railroad Company, and it employs about one hundred ten men. In 1915 its predecessor in title constructed an iron fence and a concrete base along the westerly line of its property. On conflicting evidence the master found " that neither the fence nor the foundation . . . encroach upon the land owned by the plaintiff

as alleged in the plaintiff's bill " and further found that " both the fence and foundation for its entire length are wholly upon the premises owned by the defendant." This finding must stand as there is nothing in the reported evidence to contradict it. The master finds that where this fence abuts Grand Street Court and Carson Court the defendant has installed gates in the fence, and that these gates have been used more or less by employees of the defendant and by people coming to the factory on business; that in doing this such persons necessarily cross over the six-inch strip owned by the plaintiff; that " for the last three years, however, the Carson Court gate has been used very little while the Grand Street Court gate is used a great deal, and that occasionally vehicles have passed through the Grand Street Court gate coming to the factory of the defendant "; that the defendant's lot runs to Armory Street, which lies northerly of the locus shown on the plan, and that by way of that street the defendant's workmen, customers and visitors have an easy and convenient access to the defendant's factory.

The facts found present a case of repeated and continuing trespass for which an injunction should be granted to prevent future trespasses for the reason that prosecutions at law would be attended by trouble and expense entirely disproportionate to the amount of damage which could be recovered in single actions. In a word, an action at law would not furnish an adequate redress, while in equity the present and future rights of the parties may be determined in the same proceedings.

In 1911 the defendant's predecessor in title caused an extension of the public sewer in Grand Street Court to be laid out through the center of this court to its factory building. This sewer passes through the six-inch strip owned by the plaintiff, and is still maintained by the defendant. In 1915 the defendant's predecessor in title caused an extension of the public sewer in Carson Court to be laid out running to its factory, and this sewer is still maintained through the middle of Carson Court and through the six-inch strip owned by the plaintiff. The

plaintiff knew of the installation of these sewers by the defendant's predecessor in title. At some time between 1911 and 1915 he caused a temporary wooden fence to be placed at the end of Carson Court which abuts the premises now owned by the defendant. This fence was knocked down by workmen employed in the factory and was not thereafter erected by the plaintiff. The plaintiff also protested to one of the former owners of the defendant's premises against the use of Carson Court by his workmen after the year 1915. There is nothing in the report to indicate that the plaintiff ever protested to any predecessor in title of the defendant against the installation of the sewers from the public sewers through the six-inch strip or against the use of the sewers thereafter. The defendant and its predecessors in title had no actual knowledge of this six-inch strip at the time these sewers were constructed. Since 1927, when the plaintiff acquired title to this six-inch strip of land, he has never given the defendant permission to maintain these sewers or to go over and across this strip as a way to and from its factory, and the defendant is maintaining these sewers against the consent of the plaintiff. The master finds that there is no beneficial use to which the plaintiff can put this six-inch strip of land owned by him and that the maintenance of the sewers under this strip by the defendant does not interfere with the use of the surface of the land by the plaintiff. He further finds that it would cost the defendant $1,700 to install proper sewers to take care of its factory and running from the factory into Armory Street.

In respect to the relief sought by way of prohibitory injunction against the continuance of the trespasses arising from the continuance of the sewer pipes, and a mandatory injunction requiring the removal of the sewer pipes on the plaintiff's premises and a restoration of the land which has been disturbed by the defendant in the use and maintenance of said sewer pipes, we are of opinion, in view of the facts that the trespass was unintentional, that the plaintiff was not deprived of any beneficial use

of the strip by the passing through it of the sewer pipes, that no complaint of such use was made for many years by the plaintiff or his predecessors in title of the six-inch strip of land, that a construction of a new sewer to Armory Street would involve large expense to the defendant beyond the small cost of removing the portion of the sewers on the land of the plaintiff, and that this case is within the class of cases where injunctive relief should be refused. *Starkie* v. *Richmond,* 155 Mass. 188, 195, 196. *Lynch* v. *Union Institution for Savings,* 159 Mass. 306, 308. *Harrington* v. *McCarthy,* 169 Mass. 492. *Levi* v. *Worcester Consolidated Street Railway,* 193 Mass. 116, 118. *Newburyport Institution for Savings* v. *Puffer,* 201 Mass. 41, 47. *Arizona Copper Co. Ltd.* v. *Gillespie,* 230 U. S. 46, 56. *Hunter* v. *Carroll,* 64 N. H. 572. It follows that the second and third paragraphs of the final decree are struck out and in lieu thereof a decree be entered ordering the defendant to pay the plaintiff $1 as nominal damages, such assessment and payment not to prejudice the right of the plaintiff to recover further damages of the defendant whenever the maintenance of the sewer under the six-inch strip of land shall interfere with the plaintiff's beneficial use of it. As so modified the decree is

*Affirmed.*