MICHAEL WILD & another,[1] trustees,[2] *vs.* VINCENT J.
CONSTANTINI, trustee[3] (and a companion case).

Suffolk. April 7, 1993. - June 29, 1993.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ

*Real Property*, Registered land: easement; Easement; Encumbrance; Cer-
tificate of title. *Easement.*

In a Land Court proceeding seeking amendment of the certificates of title
to certain registered land, in order to reflect that the plaintiffs' parcel
had the benefit of a right of way (not expressly referred to in any of the
certificates) over two parcels owned by the defendant as trustee, the
judge correctly concluded that the defendant was bound by his prede-
cessor trustees' actual knowledge of the encumbrance at the time of
registration proceedings in 1972, and the judge appropriately ordered
judgment amending the parties' certificates to reflect the encumbrance.
[667-669] O'CONNOR, J., dissenting.

CIVIL ACTIONS commenced in the Land Court Department
on May 26, 1989.

The cases were heard by *Peter W. Kilborn*, J., on a motion
for summary judgment.

The Supreme Judicial Court granted a request for direct
appellate review.

*William F. Macauley* (*Martin P. Desmery* with him) for
the defendant.

*Richard W. Renehan* (*Gregory P. Bialecki* with him) for
the plaintiffs.

NOLAN, J. The plaintiffs, Michael Wild and Rebecca Wild
Baxter (Wilds), trustees of Wild Realty Trust, brought two
actions against the defendant, Vincent J. Constantini, trustee

---

[1] Rebecca Wild Baxter.

[2] Of Wild Realty Trust.

[3] Of Herring Creek Farm Trust.

of Herring Creek Farm Trust, to determine their rights in two parcels of registered land in Dukes County. G. L. c. 185, § 114 (1990 ed.). A judge in the Land Court entered judgment in the plaintiffs' favor and the defendant appeals. We granted the defendant's application for direct appellate review.

We summarize the pertinent facts as drawn from the judge's findings. Prior to 1947, the Wilds' predecessors in title, Ronald and Dorothy Wild, owned contiguous parcels of land. A plan of the subject property is appended to this opinion. The property is bounded to the east by Slough Cove Road, a public way in Edgartown.

On June 20, 1947, Ronald and Dorothy Wild conveyed, by two deeds, title to their land lying between the Wild property (retained lands) and Slough Cove Road to B. Harrison Cohan and Hildegarde N. Cohan. The first deed conveyed registered land (First Herring Creek Farm Parcel), shown as lot B-1 on Land Court Plan 13419D and on the appended map. The second deed conveyed unregistered land (Second Herring Creek Farm Parcel), later to become lot 1 on Land Court Plan 34423A, and so labeled on the appended map. "In each deed, Dorothy and Ronald Wild reserved 'to the grantors a right of way, over the ways as now travelled to their remaining land, to be used in common by the grantors and others now or hereafter entitled thereto.' "[4]

On March 26, 1966, the Cohans filed a petition with the Land Court to register title to the Second Herring Creek Farm Parcel. In their petition, the Cohans acknowledged that the Second Herring Creek Farm Parcel was "[s]ubject to rights of way for all purposes, as shown on said plan, said rights of way being more particularly described as follows: Right of way, 15 feet wide, shown on said plan as lying approximately along the Northerly boundaries of the above described premises, and running from Slough Cove Road to the lands of . . . Ronald Wild et ux. . . ." The published notice

---

[4]The right of way was necessary for the enjoyment of the lands because the retained lands do not abut any public way.

for the proceeding (see G. L. c. 185, § 38 [1990 ed.]) contained the same language.

The subject right of way (the Wild right of way) is shown on the map appended hereto. The Wild right of way is comprised of four segments. Segments 2 and 4 burden the Second Herring Creek Farm Parcel. Segments 1 and 3 burden the First Herring Creek Farm Parcel.

On or about February 5, 1970, Monte J. Wallace and Neil W. Wallace, trustees of an unnamed trust dated November 4, 1969, acquired title to both Herring Creek Farm Parcels. The Wallaces shortly thereafter conveyed, for nominal consideration, title to the Herring Creek Farm Parcels to themselves as trustees of Jenkins Point Trust (later renamed Herring Creek Farm Trust). Thereafter, the Wallaces became substitute petitioners in the pending registration case concerning the Second Herring Creek Farm Parcel. The Wallaces did not attempt to amend that portion of the registration petition which acknowledged the Wild right of way. The Wallaces filed an affidavit of the Cohans which, among other things, acknowledged that the Second Herring Creek Farm Parcel "was subject to 'rights of way attributable to' . . . the Wild Property."

The Cohans and Wallaces "did not request, nor did the then owners of the Wild Property consent to, any modification or termination of the Wild Right of Way." There is evidence in the record to support the conclusion that the Second Herring Creek Farm Parcel registration proceeding was uncontested.

On October 30, 1972, a judge in the Land Court issued a decree of registration concerning the title of the Second Herring Creek Farm Parcel. The decree contains a metes and bounds description of the parcel and unambiguously provides that the property was subject to ten encumbrances. Inexplicably, the judgment did not contain an express provision describing the right of way appurtenant to the Wild property. The judgment, however, also provides: "The land hereby registered is subject to rights of way appurtenant to adjoining land as set forth in the decree in Registration

Cases No. 13419 and No. 30925, so far as now in force and applicable." Segments 2 and 4 of the Wild right of way appear on the decree plan, although they are not so labeled.

In May, 1989, the Wilds sought an order directing the amendment of their land title certificate to reflect that their property has the benefit of an appurtenant right of way across the property owned by Vincent J. Constantini, successor trustee of Herring Creek Farm Trust. The Wilds also sought a correlative order directing the amendment of certificates of title describing the Herring Creek Farm Parcels to reflect that these parcels are encumbered by the Wild right of way.

On March 11, 1992, the Land Court judge granted the Wilds' motion for summary judgment. The defendant appeals, contesting only that part of the decision that pertains to the Second Herring Creek Farm Parcel. The judge found that "this matter fits within the logic of *Feldman* v. *Souza,* 27 Mass. App. Ct. 1142 (1989) and cases cited there. . . . I find that the owners of the Herring Creek Farm Parcels had actual knowledge of the Wild Right of Way."

The judge continued: "Defendant points to the following from G. L. c. 185, § 114: 'but this section shall not authorize the court to open the original judgment of registration, . . .' citing *Hill* v. *Taylor,* 319 Mass. 5 (1944) for the same proposition. *Feldman* was a petition to modify under § 114, as here, but the relief was granted. Admittedly, in *Feldman,* the Court was dealing with a purchaser of registered land and could therefore point to the first paragraph of G. L. c. 185, § 46 and its reference to purchasers for value and in good faith. I do not, however, understand the law to be that a different standard applies to a petitioner for registration with knowledge. . . . [G]ranting the relief requested . . . will not constitute an opening of the original judgment, since it already includes reference, if indirect, to the Wild Right of Way. The relief requested is an elaboration only."

The judge also found that the "[d]efendant should not be allowed to seize on ambiguity in his Certificate of Title to destroy theretofore valid and acknowledged rights. [The de-

fendant's predecessor trustees] knew of the Wild Right of Way and acknowledged it in [their] registration filings. [They] made no move to extinguish it. Defendant is not a bona fide purchaser . . . . To adopt [d]efendant's position would be to allow the Wild Right of Way to be extinguished without notice to its holders."

Generally, "[n]o easement can pass as appurtenant affecting registered land as the servient estate, which is not disclosed on its title. . . ." *Goldstein* v. *Beal*, 317 Mass. 750, 757 (1945), quoting *Dubinsky* v. *Cama*, 261 Mass. 47, 57 (1927). Since our decision in *Killam* v. *March*, 316 Mass. 646 (1944), we have recognized an exception: If a "purchaser of registered land has notice of the existence of a way over his estate, that person takes the land subject to such an easement, even if it is not mentioned as an encumbrance in the grantor's certificate of title." *Feldman* v. *Souza*, 27 Mass. App. Ct. 1142, 1143 (1989).

Much like the *Killam* line of cases, the instant case requires us to consider the conclusiveness of an original decree of registration obtained by an owner with actual notice of an outstanding interest of another where the interest has not been unambiguously set forth in the owner's certificate of title. The narrow question here is whether the logic of the *Killam* line of cases applies to the present case. We conclude that it does.

General Laws c. 185, § 46 (1990 ed.), provides, in pertinent part: "Every plaintiff receiving a certificate of title in pursuance of a judgment of registration, and every subsequent purchaser of registered land taking a certificate of title for value and in good faith, shall hold the same free from all encumbrances except those noted on the certificate . . . ." *Killam* and its progeny were largely based on this statutory requirement. See *Feldman* v. *Souza, supra* at 1143-1144. The defendant argues that the *Killam* rule does not apply to the instant case as it does not involve a subsequent purchaser.

The defendant would have us say that an owner with actual notice of a valid encumbrance existing prior to a land

registration proceeding is not bound by such notice if the encumbrance is not unambiguously set forth in the subsequent registration certificate. This is a statement we are not prepared to make in view of our decisions which hold that a subsequent purchaser with actual notice is bound by such notice, even if the encumbrance is not set forth on the certificate. It follows that the standard which applies to a subsequent purchaser with actual notice should apply to an owner (petitioner) with actual notice. A contrary conclusion would produce an illogical result. "To be sure, reason and common sense are not to be abandoned in the interpretative process, as it is to be supposed that the Legislature intended to act in accordance with them . . . ." *VanDresser* v. *Firlings*, 305 Mass. 51, 53-54 (1940).

"The legislative intention in enacting the statute must be ascertained, 'not alone from the literal meaning of its words, but from a view of the whole system of which it is but a part, and in the light of the common law . . . .' " *Killam* v. *March*, *supra* at 650, quoting *Boston* v. *Quincy Mkt. Cold Storage & Warehouse Co.*, 312 Mass. 638, 644 (1942). It is without question that the defendant would not have prevailed at common law. A view of the whole reveals "that the underlying purpose of title registration is to protect the transferee of a registered title."[5] *Kozdras* v. *Land/Vest Properties, Inc.*, 382 Mass. 34, 44 (1980). As the present case does not involve a transferee or a bona fide purchaser, our decision does not contravene the legislative purpose. *Id.*

The defendant contends that the decision that we reach today will undermine the integrity of the land registration process. This argument is untenable. For nearly fifty years

---

[5]General Laws c. 185, § 101 (1990 ed.), provides, in pertinent part: "A person who, without negligence on his part, sustains loss or damage by reason of any error, omission, mistake or misdescription in any certificate of title or in any entry or memorandum in a registration book . . . *may* institute an action in contract in the superior court for compensation from the assurance fund for such loss, damage or depravation" (emphasis supplied). Assuming that the plaintiffs fall within the ambit of this section, a question not decided below, we do not view its provision as barring the instant action.

the rule has been that, if a purchaser of registered land takes with actual notice of an encumbrance that burdens his estate, he takes subject to the encumbrance. This rule, as history guides, has not served to cast a cloud over registered land titles. Rather, limited by the requirement of actual notice, the *Killam* rule has served to integrate fairness and justice into a system designed to promote certainty of title at the expense, in some instances, of equity. Our decision today does no more.

*Judgment affirmed.*

## APPENDIX TO THE OPINION OF THE COURT.

O'CONNOR, J. (dissenting). The court states, *ante* at 665-666, "[i]nexplicably, the judgment did not contain an express provision describing the right of way appurtenant to the Wild property. The judgment, however, also provides: 'The land hereby registered is subject to rights of way appurtenant to adjoining land as set forth in the decree in Registration Cases No. 13419 and 30925, so far as now in force and applicable.' Segments 2 and 4 of the Wild right of way appear on the decree plan, although they are not so labeled." The court is correct in stating that the decree contained no express provision regarding a right of way appurtenant to the Wild property. Registration Cases No. 13419 and 30925 do not refer to such a right of way, and segments 2 and 4 of the right of way claimed by the Wilds are not labeled on the map attached to the 1972 decree. Indeed, that map, unlike the one appended to the court's opinion, merely shows a fifteen-foot wide way which runs approximately east and west across the northern portion of the Second Herring Creek Farm Parcel and does not connect with any part of the Wild property. Thus, the 1972 decree, including the attached map, neither explicitly nor implicitly describes the registered land as being subject to a right of way appurtenant to the Wild property.

General Laws c. 185, § 47 (1990 ed.), provides that when land is registered the decree of registration "shall set forth . . . all particular . . . easements to which the land or the owner's estate is subject." General Laws c. 185, § 45 (1990 ed.), provides that the judgment of registration "shall be conclusive upon and against all persons . . . . Such judgment shall not be opened . . . by any proceeding at law or in equity for reversing judgments or decrees." A certificate of title may be amended if it does not reflect the underlying judgment, but, as this court stated in *Hill* v. *Taylor*, 319 Mass. 5, 6 (1946), "a final [registration] decree is a definitive judgment that binds the parties, even though it does not conform to the evidence or the findings or the order for a decree. . . . If the failure to make the decree so conform was error, it could have been corrected only upon some sea-

sonable and legally recognized proceeding for appellate or other review." (Citation omitted.) The Wilds could have timely appealed from the 1972 decree but did not do so. The court invalidly opened the decree by reading into it an easement to which the decree did not refer. While the result mandated by the Land Registration Act may seem to be inequitable,[1] the court should not ignore the plain language of the Act. By doing so, the court not only violates the constitutional principle of separation of powers, but also undermines the integrity of the land registration system by creating the possibility that in any lot of registered land there is an undisclosed but valid interest.

The court incorrectly relies, *ante* at 667, on *Killam* v. *March*, 316 Mass. 646 (1944), and *Feldman* v. *Souza*, 27 Mass. App. Ct. 1142 (1989). Unlike the present case, those cases involved subsequent purchasers and relied entirely on a provision in G. L. c. 185, § 46, which deals only with purchasers. That provision says that "every subsequent purchaser of registered land taking a certificate of title for value and in good faith, shall hold the same free from all encumbrances except those noted on the certificate." As this court reasoned in *Killam*, and the Appeals Court reasoned in *Feldman*, the fair implication of that statutory language is that a purchaser who takes a certificate of title that is silent about an encumbrance that the purchaser knows is appurtenant to the land does not hold the land free from the encumbrance. The court today appears to reason that, if the Legislature can "integrate fairness and justice" into the land registration system, *ante* at 669, the court can rewrite the statute to integrate its own view of fairness and justice as well. I do not agree.

---

[1]As the court recognizes, *ante* at 668 n.5, the Legislature has provided a mechanism to reimburse injured persons. G. L. c. 185, § 101 (1990 ed.).