## LIBERTY MUTUAL INSURANCE COMPANY

v.

**Alan S. ROSENTHAL, Caterina A. Rosenthal and Rosenthal Chiropractic and Rehabilitation, Inc.**

**No. CIV.A. 95–12363–RGS.**

United States District Court, D. Massachusetts.

May 13, 2002.

Paul F. Ware, David R. Zipps, Goodwin, Procter & Hoar, Boston, MA, for Plaintiff.

Mark A. Berthiaume, Goldstein & Manello, P.C., Boston, MA, Fred H. Bartlit, Jr., David P. Berten, Donald E. Scott, Bartlit, Beck, Herman, Palenchar & Scott, Chicago, IL, for Defendants.

## MEMORANDUM REGARDING ORDER PERMITTING LIBERTY MUTUAL TO REACH AND APPLY DISABILITY INCOME BENEFITS

STEARNS, District Judge.

On April 16, 2002, the First Circuit Court of Appeals, while retaining jurisdiction, authorized this court to proceed with a resolution of the issue identified in its March 21, 2002 interim order; specifically, the extent to which disability benefits owing to defendant Alan Rosenthal are exempted by M.G.L. c. 175, § 110A, from execution by plaintiff Liberty Mutual Life Insurance Co. (Liberty Mutual), a judgment creditor.[1] By way of background, on April 14, 2000, the court entered a judgment in excess of $6,000,000 against Alan Rosenthal and his estranged wife, Caterina Rosenthal, after a jury returned a verdict for Liberty Mutual in a civil RICO case. While Liberty Mutual came to a compromise settlement with Caterina Rosenthal, the bulk of the judgment remains unpaid. Liberty Mutual has waged a relentless and largely unsuccessful campaign to collect the outstanding balance from the real or imagined assets of Alan Rosenthal.

One such asset that Liberty Mutual has been able to identify is $11,000 in monthly disability benefits being paid to defendant Alan Rosenthal under four policies issued by three separate insurers.[2] On September 7, 2001, this court allowed a motion by Liberty Mutual to reach and apply these benefits subject to the exemption provided by M.G.L. 175, § 110A. The present dispute is over how that exemption is to be applied.

M.G.L. 175, § 110A, reads as follows:

So much of any benefit under a policy of insurance insuring against disability from injury or disease as does not exceed four hundred dollars for each week during any period of disability covered thereby shall not be liable to attachment, trustee process or other process, or to be seized, taken, appropriated or

---

1. Liberty Mutual's suggestion that the court determined this issue in an earlier January 30, 2002 Memorandum and Order is not correct.

2. Rosenthal presently receives benefits under policies issued by Hartford Insurance Company ($1,100 per month), National Life of Vermont ($3,500 per month) and Massachusetts Mutual (two separate policies totaling $6,757.50 per month). Benefits under a fifth policy issued by Allianz ($1,000 per month) expired in 2001.

applied by any legal or equitable process or by operation of law, either before or after payment of such benefit, to pay any debt or liabilities of the person insured under such policy, but this exemption shall not apply where an action or suit is brought to recover for necessaries contracted for during said period and the writ or bill of complaint contains a statement to that effect.

The parties agree that there is no relevant precedent interpreting the statute. They vehemently disagree, however, over the statute's proper interpretation. Rosenthal advocates a literal reading, focused on the statute's description of the affected policy in the singular, that is, "[s]o much of any benefit under *a* policy of insurance insuring against disability ... as does not exceed four hundred dollars for each week [shall be exempt]" (emphasis added). From this reading, Rosenthal claims an entitlement to an exemption of up to $1600 a month on each of his four active policies, or a combined monthly total of $5,900.

> Nowhere in the statute is there a provision for carving up the weekly exemption among "multiple policies" of insurance on a *"pro rata* basis" as Liberty Mutual has requested this Court do. As such, the plain meaning of the statute mandates that the exemption apply separately to each "policy" of disability insurance.

Rosenthal Memorandum, at 3. Liberty Mutual, without conceding that Rosenthal reads the statute correctly, argues that the statute cannot mean what it literally seems to say.

> Under Rosenthal's theory, a debtor holding multiple policies would be able to exempt more than a debtor who holds a single policy regardless of the value of the benefits provided under the policy or policies. The Legislature could never rationally intend to allow only an exemption of approximately $1,600 per month to person A with a single disability policy paying $11,000 per month in disability benefits, but to allow an exemption of over $6,400 per month to person B (e.g. Rosenthal) with four policies paying $11,000 per month in benefits, or to allow a $9,600 exemption to person C with six policies paying $11,000 per month in benefits.

Liberty Reply Memorandum, at 5.

■ Words in a statute are to be given their plain meaning unless a literal interpretation leads to an absurd result. *Summit Inv. and Development Corp. v. Leroux,* 69 F.3d 608, 610 (1st Cir.1995). As the Supreme Judicial Court has observed, "[r]eason and common sense are not to be abandoned in the interpretive process, as it is to be supposed that the Legislature intended to act in accordance with them." *Wild v. Constantini,* 415 Mass. 663, 668, 615 N.E.2d 557 (1993). "We will not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable." *Attorney General v. School Committee of Essex,* 387 Mass. 326, 336, 439 N.E.2d 770 (1982) (a literal reading of a statute intended to provide private school students with equal access to school transportation would require that "a child living in Essex and attending private school in Boston, Worcester, Albany or New York, would be entitled to transportation to and from his school every day," a result that would be "absurd [and] unreasonable"). When such is the case, "[t]he legislative intention in enacting the statute must be ascertained, 'not alone from the literal meaning of its words, but from a view of the whole system of which it is but a part ....' " *Killam v. March,* 316 Mass. 646, 650, 55 N.E.2d 945 (1944).

The "whole system" of which M.G.L. 175, § 110A, is a constituent part, is a complex of legislative dispensations and

limitations intended to prevent debtors from becoming public charges while protecting the right of creditors to obtain satisfaction of their rightful debts. *See Shamban v. Masidlover,* 429 Mass. 50, 53, 705 N.E.2d 1136 (1999). To accomplish the first goal, the Legislature has enacted laws exempting from execution the basic necessities of life, including shelter, food, clothing, public assistance money, and the essential tools of the debtor's trade or business. *See* M.G.L. c. 235, § 34 (property exempt from execution); M.G.L. c. 188, § 1 (the homestead exemption).[3] To accomplish the second goal, the Legislature has placed strict limits on the value of the property for which an exemption may be claimed. A debtor, for example, may only shield from execution $3,000 in household furniture, $500 in trade tools, $300 in provisions, and so on. That M.G.L. c. 175 § 110A, fits neatly into this system is illustrated by the exception to the $400 weekly exemption contained in the statute, permitting a creditor to levy for any sums owing for necessaries extended on credit, the exemption notwithstanding.

The point of the limitations is to ensure that exemptions intended to sustain a debtor in the necessities of life do not become a means of sheltering a debtor's assets. Thus, an exemption can only be claimed once. An estate of homestead, for example, "may be acquired on only one principal residence for the benefit of a family." M.G.L. c. 188, § 1. Monthly rent may be retained for only one apartment, and so it continues. A reading of M.G.L. c. 175, 110A, that is harmonious with the Legislature's overall purpose counsels strongly against Rosenthal's literal reading of the statute. Permitting a debtor to infinitely maximize the disability exemption by the deliberate or fortuitous splitting of his policies produces a result that is neither equitable nor consistent with the Legislature scheme.

This conclusion is reinforced by analogous interpretations by the federal courts of the scope of the exemptions contained in the federal Bankruptcy Code. *In Re Christo,* 192 F.3d 36 (1st Cir.1999), is a good example. There, the debtor argued that under 11 U.S.C. § 522(d)(11)(D), which provides for an exemption of up to $15,000 of "a payment ... on account of personal bodily injury," she was entitled to take three such exemptions on each of three personal injury claims. The First Circuit said no.

First, the language of the exemption in 11 U.S.C. § 522(d)(11)(D) refers to "a payment." While there is some ambiguity, the more natural reading is that there is a single exemption. Second, the overall scheme of exemptions in § 522(d)(11) displays a pattern of allowing one exemption per category. Third, the purpose of exemptions is to provide support for the debtors at a reasonably necessary level. The reasonably necessary level should not, logically, vary to provide more in total exemption amount to someone who is in three minor accidents than one who is in a single catastrophic accident. That is particularly so given that there are the exemptions in §§ 522(d)(10)(A) and (C) for social security and disability benefits. That is, the exemption for "a payment in account of personal bodily injury" is not a proxy for degree of disability. Fourth, the reading of the exemption as limited to one $15,000 exemption more equitably treats similarly situated debtors.

*In re Christo,* 192 F.3d at 38.

While it is true that the Legislature in M.G.L. c. 175, § 110A spoke of "a policy"

---

**3.** The Homestead Act, M.G.L. c. 188, §§ 1–1A allows a homeowner to exempt from attachment or levy on his principal residence up to $300,000 by filing a Declaration of Homestead. M.G.L. c. 235, § 34, exempts two hundred dollars a month necessary to pay rent.

rather than "a payment," it is clear from the structure of the sentence that the Legislature's focus was on the "benefit" to which the exemption was intended to apply, and not the number of policies that a debtor might own. Thus, I conclude that the statutory exemption applies to the aggregate payment to which Rosenthal is entitled and not separately to each of the policies under which the payments are made.

### ORDER

For the foregoing reasons, it is *ADJUDGED* and *DECLARED* that defendant Alan Rosenthal is entitled to a weekly desirability insurance exemption pursuant to M.G.L. c. 175, § 110A, of $400 and no more. The exemption is to be applied to his policies in the order of their purchase until the exemption is exhausted.[4]

SO ORDERED.

---

4. Since the entry of this court's March 21, 2002 Order, a similar dispute has arisen as to whether Rosenthal's retirement and investment annuities are exempt from execution under M.G.L. c. 235, § 34A, and M.G.L. c. 175, § 119A. The Court of Appeals may wish to consider authorizing this court to proceed with a decision on this issue as well, notwithstanding the pending appeal.