## Elizabeth Calci *vs.* Carmen Reitano.

No. 05-P-99.

Suffolk. February 9, 2006. - May 5, 2006.

Present: Greenberg, Kantrowitz, & Cohen, JJ.

*Practice, Civil,* Summary judgment. *Easement. Real Property,* Easement, Certificate of title, Encumbrance, Registered land.

In a civil action in which the plaintiff sought to establish title by adverse possession over a parcel of registered land, purchased by the defendant, that separated the plaintiff's property from the main thoroughfare in the town, or in the alternative, an easement over that parcel, a Land Court judge properly granted summary judgment in favor of the defendant, where there was no recorded easement by necessity or implication over the parcel, and no facts described in the defendant's certificate of title that would prompt a reasonable purchaser to investigate other related certificates of title, documents, or plans in the registration system [247-249]; where the defendant took title to the parcel in good faith, in that he had no actual knowledge of prior documents, registered or unregistered, that created an easement over the disputed parcel, as opposed to a merely permissive use of the land [249-250]; and where the encroachment of the plaintiff's second-story porch and her utilities over the parcel were not de minimis [251-252].

Civil action commenced in the Land Court Department on April 14, 2003.

The case was heard by *Charles W. Trombly,* J., on a motion for summary judgment.

*Mark J. Sampson* for the plaintiff.

*Bryan J. Kerman* for the defendant.

Greenberg, J. Once again, we face questions concerning the extent to which G. L. c. 185, §§ 46, 47, & 53, protect registered landowners from claims of others that they have acquired interests over the registered land by virtue of prescriptive rights. On February 13, 2002, Carmen Reitano purchased a narrow strip of land from the Salisbury Beach Associates (Associates).

The land, which was registered, is designated as lot 134A on a plan which we have attached as an appendix to our opinion and separates both his residential lot and that of his next door neighbor, Elizabeth Calci, from North End Boulevard, the main thoroughfare in Salisbury. The practical effect of Reitano's purchase was to block Calci's access to the boulevard to and from the front of her house. As a result, Calci filed a complaint for declaratory judgment to establish title by adverse possession, or, in the alternative, an easement over lot 134A. For his part, Reitano filed an answer to the complaint and a counterclaim, seeking injunctive relief prohibiting Calci from crossing his newly acquired lot. A judge of the Land Court, acting on Reitano's motion for summary judgment, granted his motion. Calci appeals.

1. We briefly outline the undisputed facts in the light most favorable to the appellant, under the standard applicable to a summary judgment. See *Alioto* v. *Marnell*, 402 Mass. 36, 37 (1988). In the chain of title outlined by the motion judge, it appears that the parties' respective lots were carved out from a larger tract of land, which included lot 134, as depicted on the plan. After acquiring title, but prior to the filing of a petition to register and confirm title to the land in 1911, the Salisbury Land and Improvement Company had conveyed many lots. By the time the decree of registration issued in 1913, Associates had acquired title to the remaining land.[1][2] Since lot 134 had been conveyed prior to the issuance of the decree, it was never registered.

At the time of the subdivision, the various deeds set forth reciprocal easements, providing for access by the owners over land of other lot owners to Salisbury Beach, the low watermark of which bordered the rear of the lots. The same was not true with respect to lot 134A. It had been registered with the rest of Associates's land in 1913, but was created as an individual lot sometime in 1933 when trolley tracks were removed from

---

[1]See *Doyle* v. *Commonwealth*, 444 Mass. 686, 688 n.3 (2005).

[2]The judge took judicial notice of the documents on file in the Land Court pertaining to the original registration case, including the pleadings, title abstract, and plans. See *Miller* v. *Norton*, 353 Mass. 395, 399-400 (1967); *Brookline* v. *Goldstein*, 388 Mass. 443, 447 (1983).

the edge of the boulevard and has remained in that configuration ever since.

In 2002, after a simmering dispute between Calci and Reitano heated up, Reitano became aware that lot 134A was still owned by Associates. Reitano seized the opportunity, which was open to Calci as well, to purchase the lot from Associates. He filed this deed to lot 134A for registration with the Essex South District registry of deeds, which (he alleges, and the motion judge agrees) insulates him from Calci's easement claim. In the certificate of title that issued upon registration of lot 134A, there was no mention of any easement or access right to any portion of lot 134.

2. *Analysis.* General Laws c. 185, § 46, as amended through St. 1987, c. 455, states that the holders of a certificate of title take "free from all encumbrances except those noted on the certificate," and G. L. c. 185, § 47, as amended through St. 1981, c. 658, § 27, expressly provides that, when land is registered, the judgment of registration (and subsequent certificate) "shall set forth . . . all particular . . . easements . . . to which the land or owner's estate is subject." General Laws c. 185, § 53, states, "No title to registered land, or easement, or other right therein, in derogation of the title of the registered owner, shall be acquired by prescription or adverse possession. Nor shall a right of way by necessity be implied under a conveyance of registered land." These sections of c. 185 are strictly construed because they "provide a method for making title to land certain, indefeasible, and readily ascertainable." *Feinzig* v. *Ficksman*, 42 Mass. App. Ct. 113, 116 (1997). See *Kozdras* v. *Land/Vest Properties, Inc.*, 382 Mass. 34, 43-45 (1980) (detailing the history of the Land Registration Act).

In the seminal case of *Jackson* v. *Knott*, 418 Mass. 704, 711 (1994), the Supreme Judicial Court permitted only two exceptions to the recording requirement for easements over registered parcels: "(1) if there were facts described [in the registered land's] certificate of title which would prompt a reasonable purchaser to investigate further other certificates of title, documents, or plans in the registration system" indicating the existence of the easement or other encumbrances; or "(2) if the purchaser [of the land] has actual knowledge of a prior unregistered interest." See *Killam* v. *March*, 316 Mass. 646

(1944); *Wild* v. *Costantini*, 415 Mass. 663 (1993). In this case, the question is whether there were facts within the Land Court registration system available to Reitano at the time lot 134A was conveyed to him from which he could discover that the lot was subject to an easement not listed on his certificate of title or, in the alternative, whether he had actual knowledge of the same.

a. Calci contends that there was information and documentation of an easement in the registry records from which Reitano could have been informed of an easement by necessity or implication over lot 134A. However, unless it is expressly recorded, there can be no easement by prescription, adverse possession, or necessity over registered land. G. L. c. 185, § 53.

Lot 134A, when still owned as part of a larger parcel by Associates, was registered in 1913 "subject . . . to any and all public rights legally existing in and over the same below mean high water mark." Calci interprets this to mean that a right of way was reserved from lot 134 over what would eventually become lot 134A. However, no document of record describes an express easement over lot 134A, and this vague language will not suffice to fulfil the requirements of G. L. c. 185, §§ 45 and 46, for a recorded easement on the certificate of title. See, e.g., *Jackson* v. *Knott*, 418 Mass. at 708-710 (finding that general references to a way as a boundary without a precise mention of the disputed way was insufficient to create an express easement).

Calci also argues that an express easement is recorded elsewhere in the chain of title, specifically in a "Memoranda [*sic*] of Encumbrances" for certificate of title No. 1247. This memorandum references document 55220, a section of which purports to give owners abutting lot 134A a right of way over it. However, as pointed out by Reitano, document 55220 is a petition to partition property, filed in 1948, that was subject to a motion to amend and was later voluntarily dismissed by the petitioner with no findings made by the judge who heard the petition. Because "[t]he finality and unassailability of registered title is a cornerstone of the registered land system," *Feinzig* v. *Ficksman*, 42 Mass. App. Ct. at 116, quoting from *McDonnell* v. *Quirk*, 22 Mass. App. Ct. 126, 129 (1986), the petition does

not operate as a document in the chain of title for the purpose of creating an easement.

b. Even though there is no recorded easement, Calci claims the existence of an easement under the two exceptions in *Jackson* v. *Knott*, 418 Mass. at 711. First, she claims that an easement exists because there were facts described in Reitano's certificate of title that would prompt a reasonable purchaser to investigate other related certificates of title, documents, or plans in the registration system, which would have shown the claimed easement. Since lot 134A was conveyed to Reitano by a quitclaim deed, Calci argues that Reitano was on notice to investigate what covenants and easements his land was subject to because a quitclaim deed was not a true certificate of title under the statute.

However, as we have noted, an investigation of certificate of title No. 1247 would not have provided notice of a recorded express easement over lot 134A. Since the holder of registered land is "obligated to review only documentation within the registration system, *Jackson* v. *Knott*, 418 Mass. at 711, Reitano was not obligated to investigate the petition to partition noted above which provides a somewhat more specific description of a possible easement over lot 134A.

3. Trying another tack, Calci points to the statutory requirement that a holder of certificate of title in registered land must take title "for value and in good faith." G. L. c. 185, § 46. This good faith requirement has been interpreted to mean that a title holder will not be protected by the land registration system if he has "actual knowledge of a prior unregistered interest." *Jackson* v. *Knott*, 418 Mass. at 711. See *Feldman* v. *Souza*, 27 Mass. App. Ct. 1142, 1143 (1989) ("It has been the rule for forty-five years . . . that if the purchaser of registered land has notice of the existence of a way over his estate, that person takes the land subject to such an easement, even if it is not mentioned as an encumbrance in the grantor's certificate of title").

To fulfil the actual notice exception to a recorded easement, it is not enough that the holder of registered title know that the land has been used in a certain way that might indicate an easement, because this could be merely a permissive or perhaps

adverse use, which specifically does not give right to an easement under G. L. c. 185, § 53. See *Jackson* v. *Knott*, 418 Mass. at 713. Rather there must be actual knowledge of prior documents, registered or unregistered, that create an easement over the disputed parcel. *Ibid.* See, e.g, *Tetrault* v. *Bruscoe*, 398 Mass. 454, 462 n.10 (1986) (mere knowledge of an existing roadway and its use without a further legitimate claim would not be enough to affect the plaintiff's registered parcel of land). Compare *Wild* v. *Constantini*, 415 Mass. at 663 (finding actual knowledge when grantors had conveyed an unregistered parcel reserving a right of way to themselves and a subsequent title holder had registered the parcel acknowledging this right of way); *Feldman* v. *Souza*, 27 Mass. App. Ct. at 1144 (upholding an easement where it was registered on the easement holder's transfer certificate of title but not on the servient registered landowner's certificate of title because that landowner "had been forewarned by the [easement holders'] claim of easement and their active exercise of the easement rights which they claimed"); *Emmons* v. *White*, 58 Mass. App. Ct. 54, 67-68 (2003) (holding that, where prior parties in interest had come to a settlement agreement regarding an easement, and the current owner knew that documents effectuating this settlement were forthcoming, the current owner had "intelligible verbal and written information as to the existence of the settlement agreement," and thus had "actual notice" of the unrecorded interest).

In appellate decisions where an easement that was not recorded on the certificate of title was upheld, the common thread is legitimate documentation, whether registered or unregistered, of the easement and the grantee's knowledge of that documentation. No such documentation exists here. Although the court in *Wild* v. *Constantini*, 415 Mass. at 666, noted that the trial judge found that the title holder "should not be allowed to seize on ambiguity in his [c]ertificate of [t]itle to destroy theretofore valid and acknowledged rights," there was no such acknowledgment of the easement by Reitano or, so far as appears, his predecessors in interest. There is no reference to the easement, either in the chain of title of lot 134A or outside it, that would serve to provide Reitano with actual notice of an easement as opposed to a merely permissive use of the land.

4. Even without easement rights, Calci claims that the encroachment of her second-story porch and utilities over lot 134A are de minimis and that the Land Court judge abused his discretion by not granting equitable relief. The Supreme Judicial Court has acknowledged that the courts will not enjoin "truly minimal encroachments, especially when the burden on a defendant would be very great." *Goulding* v. *Cook*, 422 Mass. 276, 279 (1996). The court noted that "property rights are not absolute" and that they may be conditioned "so that the interests of the public in general or of some smaller segment of the public, perhaps even just immediate neighbors, are not unduly prejudiced." *Id.* at 277.

In *Feinzig* v. *Ficksman*, 42 Mass. App. Ct. at 115-118, we reversed a Superior Court judge's ruling that an encroachment which measured seven feet at the widest end and consumed 195 square feet out of a total of 15,622 square feet could remain because the encroachment was "palpably more" than a de minimis encroachment. That the removal of such an encroachment (which was used to maintain a garage and a retaining wall) would saddle the plaintiff with a considerable expense even though the encroachment itself had a minor impact on the defendant's enjoyment of the parcel was "without legal consequence" because the court could not exercise its equitable power "to violate a legal principle." *Id.* at 118. Compare *Capodilupo* v. *Vozzella*, 46 Mass. App. Ct. 224 (1999).

In *Loughlin* v. *Wright Machine Co.*, 273 Mass. 310 (1930), the Supreme Judicial Court recognized a de minimis encroachment where a six-inch tract of land had been strategically reserved by a plaintiff who wanted to maintain control of a public way. The plaintiff was attempting to enjoin a public sewer from running under the strip of land. *Id.* at 312-314. While the facts found show there was a repeated trespass occurring under the land, the court found that the plaintiff or his predecessors in title had not protested the installation of the public sewers. *Id.* at 314-315. The court also supported the master's finding that there was "no beneficial use to which the plaintiff can put this six-inch strip of land," that the maintenance of the sewers by the defendant would "not interfere with the use of the surface of the land by the plaintiff," and that it would

cost the defendant significantly more to install proper sewers. *Id.* at 315. In this case, with public sewers running under a six-inch strip of land that was strategically maintained, the court found that the encroachment of the sewers was de minimis. *Id.* at 315-316.

In *Goulding* v. *Cook*, 422 Mass. at 277-278, the Supreme Judicial Court determined that, other than in "exceptional" cases, "permanent physical occupations amounting to a transfer of a traditional estate in land" could not be de minimis. In that case, the defendant was being forced by the town to implement a septic tank and had tried to negotiate to put it under a small triangle of land owned by the plaintiff. *Id.* at 276-277. Although the court sympathized with the defendants, who "[n]o doubt . . . considered themselves in desperate straits," the court also noted that this was "not the kind of desperation that justifies self-help with financial adjustments thereafter." *Id.* at 278. The court further stated that it was committed to maintaining the line protecting private property from private encroachments that were not de minimis because "the concept of private property represents a moral and political commitment that a pervasive disposition to balance away would utterly destroy." *Ibid.* Finally, the court noted that to allow the installation of a "potentially permanent, possibly malodorously malfunctioning septic system" would not accommodate the important principle recognized in balancing de minimis encroachments against private property interests but would "obliterate it in favor of a general power of equitable adjustment and enforced good neighborliness." *Id.* at 280.

In this case, under these principles and as a matter of law, the encroachments on the registered land are not de minimis.

*Judgment affirmed.*