## Commonwealth Electric Company[1] vs. Leslie H. MacCardell.

Suffolk. September 4, 2007. - November 9, 2007.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, & Cordy, JJ.

*Electric Company. Real Property,* Installation of utility lines; Certificate of title; Registered land: easement; Encumbrance.

A Land Court judge properly dismissed a petition brought by an electric company (plaintiff) seeking an amendment to the defendant landowner's certificate of title to note the plaintiff's alleged utility easement, where the plaintiff failed to establish that the defendant had actual knowledge of the easement. [50-54]

Civil action commenced in the Land Court Department on September 23, 2002.

The case was heard by *Charles W. Trombly*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Richard M. Serkey* (*Neven Rabadjija* with him) for the plaintiff.

*Kirk Y. Griffin* for the defendant.

*Henry H. Thayer*, for Real Estate Bar Association for Massachusetts & another, amici curiae, submitted a brief.

Ireland, J. On September 23, 2002, the plaintiff, Commonwealth Electric Company, filed a petition in the Land Court seeking an amendment to the defendant's certificate of title on one parcel of land owned by the defendant that would note its alleged utility easement. On January 21, 2005, the Land Court entered judgment in favor of the defendant and dismissed the plaintiff's petition. The plaintiff appealed. The Appeals Court affirmed the Land Court's judgment. *Commonwealth Elec. Co.* v. *MacCardell*, 66 Mass. App. Ct. 646 (2006). We granted the plaintiff's application for further appellate review. The plaintiff

[1]Doing business as NSTAR Electric.

argues that the defendant had actual knowledge of the utility easement by virtue of the fact that the poles were on her property and supplied electricity to her residence; therefore, the Land Court improperly dismissed its petition to amend the defendant's title. Because we conclude that the plaintiff failed to establish that the defendant had "actual knowledge" of the utility easement, we affirm the decision of the Land Court dismissing the plaintiff's petition to amend the defendant's title.[2]

*Facts.* The judge found the following facts. Thomas Murray owned two parcels of land on Plum Hill Avenue in Duxbury. On June 5, 1936, Murray granted an easement to the plaintiff's predecessor, Plymouth County Electric Company, for the installation of transmission lines. The easement deed did not provide compass directions, it merely mentioned that the land was located in Duxbury and that the pole lines could "enter from land now or formerly of Plum Hill Avenue and cross to land now or formerly of Chester L. Churchill."

On April 13, 1944, William T. Reagan, administrator of the Murray estate, filed an action in the Land Court in order to register and confirm the title to the two parcels of land on Plum Hill Avenue. The smaller parcel, Lot 1, is located on the north side of Plum Hill Avenue and the larger parcel, Lot 2, is located on the south side of Plum Hill Avenue. On October 25, 1944, the Land Court entered a decree that confirmed and registered the two lots to Reagan. After the decree had been entered, the Plymouth registry district of the Land Court issued a certificate of title to Reagan. Both the certificate of title and the Land Court decree of registration state that "*lot 2* is subject to pole easements as set forth in a deed given by Thomas Murray to the Plymouth County Electric Co., dated June 5, 1936, duly recorded." However, the defendant inhabits and owns Lot 1, which contains the actual poles. The poles supply electricity to both the defendant's property and the adjacent property owned by Alec and Leah Petro. Neither certificate of title refers to the poles or utility easement that the plaintiff is claiming.

The present dispute arose when Petro requested that the plaintiff increase the level of electrical service to his home. The

---

[2] We acknowledge receipt of an amicus brief of the Real Estate Bar Association for Massachusetts, Inc., and The Abstract Club.

plaintiff determined that, in order to effectuate this increase in service, a transformer might need to be installed on a pole located on the defendant's property. When it conducted a search of the records to discern whether it had an easement, the plaintiff found that there was an easement on the certificate of title for Lot 2 but no easement on the certificate of title for Lot 1. Consequently, it petitioned the Land Court pursuant to G. L. c. 185, § 114, to amend the defendant's certificate of title for Lot 1 to hold the easement. The plaintiff contends that in 1944 the registration decree imposed the easement on the wrong lot, Lot 2 rather than Lot 1. The defendant argues that she purchased a title with no encumbrances and allowing the plaintiff to amend her certificate would impair that title.[3]

The Land Court title examiner selected to conduct the title search of the properties found that the easement granted by Murray to Plymouth County Electric Company in 1944 should have been registered as an encumbrance on Lot 1 and not Lot 2.

*Discussion.* The principal reason for establishing a land title registration system pursuant to G. L. c. 185 is to provide individuals with a means of ensuring that titles to land are indefeasible and certain. *Feinzig* v. *Ficksman*, 42 Mass. App. Ct. 113, 116 (1997). *McDonnell* v. *Quirk*, 22 Mass. App. Ct. 126, 129 (1986). The statutory mechanism for amending an error in the certificate of title is prescribed by G. L. c. 185, § 114.[4] It is well established that certificate of title holders and subsequent purchasers of registered land for value and in good faith take "free from all encumbrances except those noted on the certificate." G. L.

---

[3]The defendant contended that amending the certificate would impair her title because she would then be subject to at least a five-to-ten foot pole height increase and trees would have to be cut.

[4]General Laws c. 185, § 114, states, in relevant part: "No erasure, alteration or amendment shall be made upon the registration book after the entry of a certificate of title . . . except by order of the court. A registered owner or other person of interest may apply by motion to the court upon the ground that . . . error or omission was made in entering a certificate . . . and the court may hear and determine the motion after notice to all parties in interest, and may order the entry of a new certificate . . . but this section shall not authorize the court to open original judgment of registration, and nothing shall be done or ordered by the court which shall impair the title or other interest of a purchaser holding a certificate for value and in good faith, or his heirs or assigns, without his or their written consent."

c. 185, § 46. Furthermore, with respect to easements, the general rule is that "[i]n order to affect registered land as the servient estate, an easement must appear on the certificate of title." *Tetrault* v. *Bruscoe*, 398 Mass. 454, 461 (1986). See *Jackson* v. *Knott*, 418 Mass. 704, 710 (1994). However, the court has carved out two exceptions to the general rule: "(1) if there were facts described on his certificate of title which would prompt a reasonable purchaser to investigate further other certificates of title, documents, or plans in the registration system; or (2) if the purchaser has actual knowledge of a prior unregistered interest." *Id.* at 711. It is undisputed that the utility easement was not noted on the defendant's certificate of title or referenced within other documents within the registration system. Therefore, we need only consider the "actual knowledge" exception.

The "actual knowledge" exception is based on the statutory good faith requirement in G. L. c. 185, § 46. Essentially, this means that for a title holder to benefit from the protections afforded by the land registration system, the title holder must be a good faith purchaser and must not possess actual knowledge of unregistered interests, i.e., easements.[5] *Calci* v. *Reitano*, 66 Mass. App. Ct. 245, 249 (2006). See *Jackson* v. *Knott*, *supra* at 711. A party seeking to encumber an owner's registered land on the ground that he or she had actual knowledge of the unregistered interest bears the burden of proving the actual knowledge. *Jackson* v. *Knott*, *supra* at 710-711. See *Sandwich* v. *Panciocco*, 48 Mass. App. Ct. 556, 561 (2000).

The actual knowledge exception was first applied in *Killam* v. *March*, 316 Mass. 646, 652 (1944), where the court held that a purchaser of registered land was subject to the encumbrance of an unregistered lease when the purchaser had actual notice through a reference to the lease in the purchase and sale agreement.[6] Registered land owners forfeit the protections afforded by the registration system when they have actual notice because the "Legislature did not intend to give certificate hold-

---

[5]The plaintiff conceded at the hearing that the defendant was a good faith purchaser.

[6]"Actual knowledge" and "actual notice" are treated the same when applying the actual knowledge exception articulated in *Jackson* v. *Knott*, 418 Mass. 704, 711, 713 n.6 (1994).

ers . . . an indefeasible title as against interests of which they had actual notice." *Id.* at 651.

One way to satisfy the actual knowledge exception is through "documentation, whether registered or unregistered." *Calci* v. *Reitano, supra* at 250. In the *Calci* case, the defendant purchased registered land that had a certificate of title free of any encumbrances; however, the plaintiff claimed an easement over the defendant's land. *Id.* at 246. The Appeals Court stated, "To fulfil the actual notice exception to a recorded easement, it is not enough that the holder of registered title know that the land has been used in a . . . way that might indicate an easement, because this could be . . . [either] adverse use, which" is not allowed under G. L. c. 185, § 53, or permissive use. *Id.* at 249-250. The Appeals Court held that no actual knowledge existed because there was no documentation registered or unregistered of the easement and no evidence that the defendant knew of any such documents. *Id.* at 250.

Essentially, the standard for determining actual knowledge is whether there is "[i]ntelligible information of a fact, either verbally or in writing," or in documentation that can be registered or not. *Emmons* v. *White*, 58 Mass. App. Ct. 54, 65 (2003), quoting *George* v. *Kent*, 7 Allen 16, 18 (1863).[7] This standard makes sense in light of the statute's over-all purpose, which is to establish indefeasible titles for good faith purchasers who are unaware of unregistered encumbrances attached to their registered land.

In the present case, the plaintiff argues that *Feldman* v. *Souza*, 27 Mass. App. Ct. 1142 (1989), is the controlling case. We

---

[7]See *Wild* v. *Constantini*, 415 Mass. 663, 666 (1993) (actual knowledge where owner of parcel acknowledges the existence of right of way before land is registered that owner is bound by encumbrance even if it is not on subsequent registration certificate); *One-O-Six Realty, Inc.* v. *Quinn*, 66 Mass. App. Ct. 149, 154 (2006) (actual knowledge of easement on registered land where landowner of two abutting parcels, one registered and one unregistered, knew deed of unregistered parcel contained easement with particular provisions, and where one could not use the easement without crossing the registered land); *Emmons* v. *White*, 58 Mass. App. Ct. 54, 68 (2003) (actual knowledge existed where current owner knew about the documents effectuating a settlement agreement regarding easement between predecessor in title and adjacent property owners because owner "took title having intelligible verbal and written information as to the existence of the settlement").

disagree. There, the plaintiffs sought to amend the defendants' certificate of title to include an easement. *Id.* at 1143. The easement was noted on the plaintiffs' transfer certificate of title but was not on the defendants' certificate. *Id.* at 1142-1143. However, before the defendants purchased the property Feldman told Souza that he had an easement. *Id.* at 1143. In addition, on the original registration plan and subsequent revisions there was an unlabelled strip that "looks like a right of way." *Id.* The Appeals Court concluded that the defendants had actual knowledge of the easement. *Id.* at 1144. Unlike in the *Feldman* case, the defendant was not explicitly forewarned by the plaintiff that there was a utility easement before she purchased Lot 1. Moreover, no documents existed that explicitly reference an easement on Lot 1. In fact, if the defendant had tracked down the original certificate of title granted to Reagan in 1944, it would have referenced an easement on Lot 2, not Lot 1.[8] Therefore, we disagree with the plaintiff's assertion that the *Feldman* case controls.

The plaintiff has not presented any proof that the defendant had actual knowledge of the easement and thus has not met its burden of proof. The plaintiff did not depose the defendant nor was she questioned during the Land Court proceeding. Instead, the plaintiff relies on the presence of utility poles on the defendant's property, the fact that she can turn her lights on every morning, and the fact that she receives a monthly utility bill to prove that the defendant had actual knowledge. Moreover, the plaintiff argues that "[u]nlike an access case . . . it is inconceivable that a utility company's installation and use of poles" would ever be permissive rather than a claim of right. These arguments are unpersuasive. To meet the actual notice exception it is insufficient merely to claim that the holder of registered title knew that the land was being used in a way that might indicate an easement. The use may be adverse, which does not create an easement under G. L. c. 185, § 53, or a registered owner might have granted permissive use. See *Calci* v. *Reitano, supra* at 249-250. The plaintiff provided no evidence to support its assertion that the installation of poles would never

---

[8] It is unreasonable to ask potential registered landowners to be responsible for tracking down encumbrances on property they do not plan on purchasing.

be granted through permissive use. Moreover, the mere presence of a utility pole does not automatically place a registered landowner on notice that his or her property might be encumbered because the actual owner of a utility pole is not readily ascertainable and the average lay person may be unaware of the exact boundaries of the property.[9] To meet the actual knowledge exception, there must be some intelligible oral or written information that indicates the existence of an encumbrance or prior unregistered interest. *Emmons* v. *White, supra* at 68.

*Conclusion.* For the reasons set forth above, we affirm the Land Court's decision, dismissing the plaintiff's petition to amend the defendant's title.

*So ordered.*

---

[9]At oral argument the plaintiff urged us to adopt a constructive knowledge test that would impute actual knowledge on a purchaser of registered land where there is sufficient evidence of the possible existence of an easement which would alert a reasonable purchaser to investigate further. We decline to do so. A constructive knowledge test would not help the plaintiff because ownership of a utility pole is not readily ascertainable. A utility pole could be owned by a municipality or a utility company. See, e.g., G. L. c. 164, § 34A (*a*) (allowing municipalities to purchase light poles). See *Cambridge* v. *Department of Telecommunications & Energy*, 449 Mass. 868, 872 (2007). Such a test would also subvert the goals of the land registration system.