## HANOVER INSURANCE COMPANY vs. CATHERINE GOLDEN & another.[1]

No. 99-P-38.

Middlesex. December 7, 2000. - May 3, 2001.

Present: ARMSTRONG, C.J., KAPLAN, & GREENBERG, JJ.

Further appellate review granted. 434 Mass. 1106 (2001).

*Insurance,* Motor vehicle insurance, Construction of policy, Insurer's obliga-
tion to defend. *Contract,* Insurance. *Practice, Civil,* Declaratory proceed-
ing, Attorney's fees.

Insureds under an automobile insurance policy were entitled to reasonable at-
torney's fees and expenses incurred in their successful defense of an action
by their insurer seeking a declaration establishing the insurer's duty to
defend under the policy [467-468]; retroactive application of the Supreme
Judicial Court's decision in *Preferred Mut. Ins. Co.* v. *Gamache,* 426
Mass. 93 (1997), creating an exception to the traditional rule regarding at-
torney's fees and expenses, decided the same day as the notice of appeal
was dated in the present case, was fair and warranted in the circumstances
[468-469].

CIVIL ACTION commenced in the Superior Court Department on
August 17, 1988.

The case was heard by *Isaac Borenstein,* J.

*Andrew Aloisi* for the defendants.

*John D. Boyle* for the plaintiff.

KAPLAN, J. On this appeal we apply the rule established in the
*Gamache* and *Rubinstein* cases. *Preferred Mut. Ins. Co.* v.
*Gamache,* 426 Mass. 93 (1997). *Rubinstein* v. *Royal Ins. Co. of
America,* 429 Mass. 355 (1999). Those cases considered the
question of responsibility for attorney's fees incurred by an
insured in defending against his insurance company's action for
a declaration about the scope of the company's duties under the
policy.

---

[1]Martin Golden.

On November 14, 1985, Carol Brisette was struck and injured by a vehicle driven by Catherine Golden and owned by Martin Golden. Brisette commenced suit against the Goldens on May 24, 1986, claiming damages of $500,000 for herself and $100,000 for her son for loss of mother's consortium. As liability insurer, Hanover Insurance Company commenced the defense of the action. Hanover notified the Goldens by letters of June 5, 1986, that as the amount sued for in the Brisette action exceeded the $100,000 limit of the policy, "you may, if you so desire, employ additional counsel, at your expense, to be associated with our attorney in the handling of the litigation." On June 12, 1986, counsel for the Goldens wrote they would not file an appearance, but would be glad to assist in interrogatories, document production, and other aspects of Hanover's defense. Thereafter the Goldens' counsel did cooperate as indicated. As early as August 27, 1986, Hanover offered the Brisette plaintiffs $100,000 in total settlement, but the offer was declined.

By October, 1988, there had been discovery and other preparation for possible trial. Hanover, however, on October 11, 1988, brought the instant action in Superior Court against the Goldens, seeking "a declaratory judgment that it may pay to [the Brisettes] the full amount of the available liability coverage ($100,000.00) and by so doing fully discharge its obligation to defend and indemnify [the Goldens] for the accident at issue . . . ." The Goldens' motion to dismiss the action failed. They filed an answer with counterclaim. Cross motions for summary judgment followed on the case apart from the counterclaim. A judge of the Superior Court held, with memorandum, against Hanover, and on May 12, 1989, entered judgment declaring that Hanover "has an obligation to defend [the Goldens] in the litigation brought against them by [the Brisettes]."

Hanover noticed an appeal from the judgment — entered as a final judgment under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974) — on June 5, 1989. It withdrew the appeal in July, 1989.

Counsel for the Goldens in September, 1989, requested payment by Hanover of attorney's fees and expenses in the claimed

amount of $16,307 incurred by the Goldens in their successful defense of the declaratory action.[2] Payment was refused.

Instructed by the declaratory judgment, Hanover continued its representation of the Goldens in the Brisette action.[3] By June, 1994, the Brisette action had been settled for $112,000, of which Hanover contributed $100,000, and the Goldens the balance.

The counterclaim remained, and after a long lapse, it reached trial in February, 1997. The counterclaim set out alleged unfair or deceptive practices on the part of Hanover entitling the Goldens to relief under the consumer protection statutes, G. L. c. 93A and c. 176D. It alleged also (although rather inartfully) that by bringing the declaratory suit Hanover created a conflict of interest with the Goldens, its insureds, and was therefore bound to provide the Goldens with independent counsel (see counterclaim, count III) or, alternatively, to cover the Goldens' damages, notably attorney's fees and expenses, in resisting the action to a successful conclusion (count V).

The trial (nonjury) of the counterclaim centered upon the c. 93A and c. 176D claims of unfair or deceptive practices. These claims turned out to be weak. Thus there was not much substance in a claim that Hanover misrepresented its June 5, 1986, letters to the Goldens as amounting to a "reservation of rights" and by so doing engaged in an unfair or deceptive act. Also weak was a claim that the bringing of the action for a declaration was itself an unfair or deceptive practice under the cited statutes. The trial judge, on findings of fact and rulings of law, held correctly for Hanover on the counterclaim, dismissing the statutory claims.

The statutes to one side, however, the Goldens on the basic facts, as recounted above and rehearsed in the trial judge's findings, had a clear right to be reimbursed the attorney's fees and expenses incurred by them in their successful defense of the declaratory action: these corresponded to the unit or base damages which in certain circumstances might have been trebled if the statutory requisites for such recovery had been satisfied. The right to the unit reimbursement is clear when the rule of the

---

[2] The record contains an affidavit of the Goldens' counsel itemizing the work done.

[3] The record does not particularize this representation.

*Gamache* case, 426 Mass. at 97-98, as reinforced by the *Rubinstein* case, 429 Mass. at 357-360, is applied: in essence, when a liability insurer rounds on the insured and treats the insured to a declaratory action about the insurer's duties under the policy, and the insurer fails and the insured succeeds on the merits, the insurer must reimburse the insured for his attorney's fees and expenses.

The court speaks in broadly inclusive terms: "[A]n insured 'is entitled to the reasonable attorney's fees and expenses incurred in successfully establishing the insurer's duty to defend under the policy.'" *Rubinstein*, 429 Mass. at 359, quoting from *Gamache*, 426 Mass. at 98. While the proposition was established by *Gamache* in respect to a homeowner's policy, it extends to other liability insurance — a comprehensive liability policy in *Rubinstein*, 429 Mass. at 356-357, an automobile insurance policy in the present case. It does not matter whether the insurer initiated the declaratory action in good or bad faith, *id.* at 359-360, or whether the question tendered for decision was a close question or one not subject to legitimate dispute. *Id.* at 360. There appear to be no special refinements about the particular question of insurer's responsibility on which a declaration is sought: the question in the present case of the insurer's right under the policy to discharge its duty to defend and indemnify the insured upon payment of the policy limit, is just as amenable to the rule as the question of the meaning of an exclusion for "an intentional act of an insured" in *Gamache* (426 Mass. at 94). It should not matter whether (as in *Gamache*) the insurer announces withdrawal from the third-party action and sues for a declaration, or (as in the present case) brings a declaratory action and provisionally maintains defense of the third-party action pending instruction by the declaration. In either case the insured deserves reimbursement for his reasonable outlay "in successfully establishing the insurer's duty to defend under the policy." *Rubinstein*, 429 Mass. at 359.

Hanover argues that *Gamache* should not be applied "retroactively," but *Rubinstein* holds squarely to the contrary.[4] The court said at 360 n.5: "We reject the defendant's argument

---

[4]Hanover's counsel evidently were unaware of *Rubinstein*, decided shortly before they served and filed their brief.

that the rule in *Gamache* should not be applied retroactively,'' and the court added, "The trustees [insureds] had requested an award of attorney's fees in the Superior Court, and *Gamache* was decided the day after the appeal was entered in the Appeals Court."[5]

The application of *Gamache-Rubinstein* to the antecedent facts in the instant case is fair and warranted. Hanover could not have been in doubt that the Goldens (foretelling *Gamache*[6]) believed they were entitled to the reimbursement — as noted, they had demanded payment soon after Hanover withdrew its appeal from the adverse declaration. The same insistence on payment appears repeatedly in the course of the litigation through the trial of the counterclaim.[7] It appears in the Goldens' request for findings of fact (no. 32) and rulings of law (nos. 24-26). Finally, in their motion to amend the judge's findings or for a new trial, the Goldens complained of the judge's failure to rule on the issue that Hanover had not provided them with counsel or reimbursed them for the payments due to the lawyers they had to retain in their own behalf in the declaratory action. The judge denied the motion without responding to this complaint and thus in effect denied the reimbursement.

*Conclusion.* The judgment on the counterclaim for Hanover (defendant in counterclaim) is affirmed except insofar as it failed to direct Hanover to pay the Goldens (plaintiffs in counterclaim) the reasonable attorney's fees and expenses incurred by them in defending against the declaratory judgment action, and in that respect the judgment is reversed. Accordingly, the case is remanded to the Superior Court to determine the reasonable amount of such fees and expenses and for entry

---

[5]*Gamache* was decided by the Supreme Judicial Court on November 7, 1997. The Goldens' notice of appeal in the present case was dated the same day.

[6]There was nothing remote or arcane about the *Gamache* decision. As appears in the opinion (426 Mass. at 96-97), decisions around the country had divided into "schools" with the *Gamache* view already well supported in the decided cases and the literature.

[7]Note the statements in the Goldens' motion to dismiss the declaratory action and in their supporting memorandum, in count III of the counterclaim (mentioned above), in their brief supporting their motion for summary judgment of the case apart from the counterclaim, in the opening speech and testimony on their behalf and in colloquy at the trial of the counterclaim.

of judgment awarding such fees and expenses to the Goldens (plaintiffs in counterclaim).

*So ordered.*