# John H. Emmons, Jr., & another,[1] trustees,[2] *vs.* Mark White & others.[3]

No. 00-P-1511.

Suffolk. October 3, 2002. - May 9, 2003.

Present: Lenk, Berry, & McHugh, JJ.

*Easement. Real Property,* Easement, Conveyance. *Notice.*

In a civil action arising from the defendants' claim that they held an appurtenant easement to use a certain road located on the plaintiff's property, which is adjacent to the defendants', the defendants did not succeed to a retained claim of an appurtenant easement in favor of their land due to the failure of a predecessor in title to sign the purchase and sale agreement concerning the sale of that property to the defendants, a settlement resolving a dispute with the plaintiffs about claimed easement rights, or the deed conveying the property to the defendants, where the predecessor never asserted his ownership interest in the property and was, accordingly, estopped from asserting any claimed easement rights against the plaintiffs following the settlement. [59-62]

In a civil action arising from the defendants' claim that they held an appurtenant easement to use a certain road located on the plaintiff's property, which is adjacent to the defendants', the defendants were bound by a settlement that a predecessor in title had reached with the plaintiffs regarding claimed easement rights, where, although the settlement documents were not of record when one of the defendants took title to the property, an enforceable settlement existed well before the execution of the settlement documents, such that knowledge of the settlement's existence was tantamount to notice of the documents necessary to effectuate the conveyance called for in the settlement; and where, at the time the one defendant took title, he had intelligible verbal and written information as to the existence of the settlement agreement. [62-68]

In a civil action arising from the defendants' claim that they held an appurtenant easement to use a certain road located on the plaintiff's property, which is adjacent to the defendants', the judge did not err in ignoring evidence that the plaintiffs had actual notice of the defendants' interest in

---

[1]Kenneth S. Safe, Jr.

[2]Of the Clause SIXTH Trust under the will of Charles A. Welch, allowed February 6, 1945, Dukes County Probate No. D5/2044.

[3]Elizabeth R. McCarthy White, Joan B. Palmer Pretty, and Lionel McNeil Pretty.

the easement when the plaintiffs accepted a release deed from the predecessor in title to the defendants, but rather focused on the issue whether the defendants were bound by a settlement agreement reached by the plaintiffs and the defendants' predecessor in title. [68-69]

In a civil action arising from the defendants' claim that they held an appurtenant easement to use a certain road located on the plaintiff's property, which is adjacent to the defendants', the plaintiffs did not waive their right to enforce a settlement agreement reached with the defendants' predecessor in title by revoking their withdrawal of appearance in an action for registration of the defendants' property, where the plaintiffs' revocation of their withdrawal was prompted solely by the threat that the consideration offered by the predecessor — release of the claim to the appurtenant easement — would be nullified if the plaintiffs were not to prevail in this action seeking a declaration that the settlement was valid and enforceable. [69]

CIVIL ACTION commenced in the Land Court Department on January 6, 1997.

The case was heard by *Leon J. Lombardi, J.*

*Robert Wolkon* for Mark White & another.

*Lisa C. Goodheart* for the plaintiffs.

LENK, J. The main point of contention in this case is the claim by the defendants Mark and Elizabeth White that they hold an appurtenant easement to use a certain road located on the property adjacent to theirs that is owned by the plaintiffs (trustees). Both parcels are located on Chappaquiddick Island in Edgartown. The trustees' parcel is registered land while the Whites' parcel is not, although at all relevant times there has been pending in the Land Court a registration case concerning the parcel that the Whites now own.

The trustees brought this case seeking declaratory judgment in 1997, shortly after the Whites first asserted their right to use the road on the trustees' land. Reduced to essentials, the trustees' position is that, prior to the Whites' 1996 purchase of the parcel they now own, the trustees reached agreement with the Whites' predecessor in title (Joan and Lionel Pretty) whereby the Prettys released any claim of right they may have had to use the road in question (the disputed way). The Whites' contrary position is that they retain the easement rights of Lionel Pretty, who never entered into the settlement agreement that his wife Joan made with the trustees. The Whites also argue that even if

Lionel Pretty is nonetheless bound by that settlement, the Whites are not bound by it because they did not have actual notice of any such conveyance before buying their parcel. The trustees prevailed after five days of a bench trial, and the Whites appeal. We affirm.

*Facts.* Because the Whites generally do not challenge the judge's extensive findings of fact,[4] we recite them in the detail necessary to resolve the questions before us. The Whites' parcel of property was previously owned for some time by members of Joan Palmer's family. In 1986, after the parcel was conveyed to her, Joan Palmer — not yet married to Lionel Pretty at the time — filed a petition with the Land Court to register and confirm title to the parcel, to which we shall refer as the "Pretty parcel." As part of her petition, Joan Palmer claimed an appurtenant easement across the trustees' registered land, i.e., the disputed way.[5] The trustees (among others) filed an answer, objecting to the claimed easement and, in turn, asserting certain easement rights over the Pretty parcel. Otherwise put, the pleadings identified the claimed easement over the disputed way as a contested issue between Joan Palmer and the trustees. After marrying Lionel Pretty in 1989, Joan Palmer Pretty conveyed the Pretty parcel to herself and her husband as joint tenants but

---

[4]The Whites do contend that there was no competent evidence in the record to support two of the judge's sixty-four findings of fact. The challenged findings concern Lionel Pretty's inaction with respect to assertion of any ownership interest in the land now owned by the Whites. Our review of the record pursuant to the relevant standard, see *Williams* v. *B & K Med. Sys., Inc.,* 49 Mass. App. Ct. 563, 567 (2000); Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996), discloses that the challenged findings are not clearly erroneous. To the extent that the Whites also suggest in their brief that other factual findings may not be supported by the record, we conclude that they have failed to establish any clear error in such findings.

[5]The legal basis (i.e., by grant or otherwise) for the claimed appurtenant easement over the disputed way has never been established. The trial judge specifically noted that he did not reach the question of the origin of the claimed easement allegedly acquired by a C.A. Bettencourt, one of the sources of title to which Joan Palmer's mother referred when conveying the parcel to her daughter. The judge observed that "[t]he mere fact the easement is noted on Certificate 1364 [one of the trustees' parcels] does not by itself entitle the successors to C.A. Bettencourt to such a right." Hence, the claimed easement at all relevant times has been just that: a claim of an appurtenant easement in favor of unregistered land over a registered servient estate.

neglected to add him as a party to the registration case. The two lived, after their marriage, in Canada and in Falmouth.

Early in 1991, through counsel, Joan Palmer Pretty ("Mrs. Pretty") and the trustees reached a verbal settlement as to the easement claims, providing in substance that Mrs. Pretty would relinquish her claimed easement right over the trustees' land in return for the trustees' withdrawal of their appearance in the registration case and the withdrawal of any objection they had to the registration of the Pretty parcel.[6] Later that same year, Mrs. Pretty put the Pretty parcel on the market, telling the selling broker that a right of way over the trustees' parcel was not to be granted to any purchaser of the Pretty parcel. In 1993, counsel for the trustees and Mrs. Pretty preliminarily documented the 1991 settlement through an exchange of letters, and the trustees' counsel subsequently notified the Land Court in writing of the 1991 settlement. A statement under pretrial order was also filed with the Land Court in 1993 advising that a settlement with the trustees had been reached.

In early July, 1995, the selling broker showed Mark White the Pretty parcel. Not yet married at the time, White was a lawyer with more than ten years' experience as a commercial real estate developer, broker, and advisor. Over that summer, White made three different purchase offers for the Pretty parcel, the third proving successful. Prior to making the offers, White had not done any independent research regarding the issue of possible access over the trustees' parcel; all he knew was what the selling broker had told him, viz., that the right to use the disputed way was personal to Mrs. Pretty's family and there were no guarantees that such access would be made available to him. The disputed way was in any event only one of several means of access to the Pretty parcel, and White had not used the disputed way to gain access when he viewed the Pretty parcel.

A purchase and sale agreement dated August 31, 1995, was executed by White and Mrs. Pretty; an addendum to it stated that "Seller and Buyer recognize that title to the property to be

---

[6]Of necessity, the withdrawal of the trustees from the registration case would entail the abandonment of their claimed easement over the Pretty parcel as well.

sold is not clear, good and marketable and that the premises are the subject of Land Court Registration Case 42021." The addendum also detailed the terms under which White would accept title if Mrs. Pretty were unable to deliver good, clear, and marketable title at the time designated for performance.

White was concerned about the timing of the Pretty parcel registration case and, in November, 1995, obtained a copy of a 1994 letter from a staff attorney at the Land Court to Mrs. Pretty's lawyer, Mr. DeWitt. The letter outlined what remained to be done before registration of the Pretty parcel could be finalized, addressing, among other things, the need to execute certain documents pertinent to the settlement agreement with the trustees. White telephoned Mr. DeWitt on November 20, 1995, and reviewed the letter with him; during that call, Mr. DeWitt told White that the settlement with the trustees was "basically a done deal." White spoke with the selling broker the next day about the Pretty parcel registration case and faxed her a copy of the 1994 letter from the Land Court staff attorney to Mr. DeWitt. The broker's notes of this conversation reflect that White knew of the subject easement issue.

Thereafter, the broker, Mrs. Pretty, and a trust beneficiary who lived on the trustees' parcel all pressed Mr. DeWitt and the attorney for the trustees to complete the final settlement documentation. On December 13, 1995, Mrs. Pretty (but not Mr. Pretty) executed a release deed and an amendment to the Pretty parcel registration case, and the next day, the trustees executed their release deed and a withdrawal of their appearance and answer in the Pretty parcel registration case. Following the execution of these papers, the Prettys did not use the disputed way and the resident Trust beneficiary did not use the Pretty parcel for access to or from the trustees' parcel. The trustees, however, did not register the Pretty release deed until July 25, 1996, and the trustees' release deed was not recorded until July 30, 1996.

Mrs. Pretty conveyed the Pretty parcel by deed to White (who was still unmarried) on March 18, 1996; Mr. Pretty was not a signatory. For a title reference, the deed cited the "pending Land Court Registration Case No. 42021," and, among other provisions, stated that the conveyance was "[s]ubject to

and with the benefit of certain 8'± driveways and other ways as described in petition for registration referenced above or as the Land Court may decree." White did not inquire at closing as to the disputed way or as to the settlement with the trustees, nor did he see the plan of land referred to in the deed he took. Indeed, prior to closing, White had not had any title examination conducted of the Pretty parcel.

A title report subsequently ordered by Mrs. Pretty's new lawyer, Mr. Gray, to update the Pretty parcel registration was received by him in the fall of 1996; it revealed Mr. Pretty's joint tenancy interest in the Pretty parcel at the time of the March 18, 1996, closing. White was informed of this, and he and Mrs. Pretty spoke thereafter; in response to his inquiry as to access roads to the Pretty parcel, she told him of the late 1995 release she had signed and, as requested, later sent him a copy. In November, 1996, both Mr. and Mrs. Pretty executed a confirmatory deed conveying all of their interest in the Pretty parcel to Mark and Elizabeth White (now married) as tenants by the entirety.

In December, 1996, the Whites, through counsel and with the confirmatory deed in hand, asserted to the trustees that they (the Whites) held a valid right in the disputed way. They claimed in this regard that Mr. Pretty had not released his interest in the disputed way before conveying his title in the Pretty parcel to the Whites via the November, 1996, confirmatory deed, and that the Whites, thus, now held whatever rights to the disputed way Mr. Pretty had held and conveyed to them. In January, 1997, the judge in the Pretty parcel registration case allowed the trustees' motion to revoke their withdrawal of appearance and answer (which had been filed in September, 1996) and permitted the Whites to be substituted for Mrs. Pretty as petitioners.

1. *Mr. Pretty's asserted retention of easement rights postsettlement.* Mr. Pretty did not sign (a) the August, 1995, purchase and sale agreement concerning the sale of the Pretty parcel to White; (b) the December, 1995, settlement documents resolving the dispute with the trustees about claimed easement rights; or (c) the March, 1996, deed conveying the Pretty parcel to White. The Whites attach particular significance to Mr. Pretty's failure to sign the settlement documents. As a result of this,

they say, when he later signed the confirmatory deed for the Pretty parcel in November, 1996, they succeeded to his retained claim of an easement over the disputed way. The trial judge determined, however, that Mr. Pretty had never asserted his ownership interest in the Pretty parcel. Mr. Pretty was accordingly estopped from asserting any claimed easement rights against the trustees following the settlement and its effectuation by the fully executed settlement documents, just as he was estopped from asserting any ownership interest in the Pretty parcel against White after the execution by Mrs. Pretty of the March, 1996, deed of conveyance. In other words, the Whites did not succeed to a retained claim of an appurtenant easement in favor of their land. On appeal, they challenge this ruling, arguing in substance that the evidence and applicable law do not support it.

The judge found on the credible evidence before him that, in 1989, following their marriage, Mr. and Mrs. Pretty had conveyed to each other as joint tenants the properties they had each owned individually before their marriage. Although the Pretty parcel was thereafter their jointly owned property of record, Mr. Pretty nonetheless considered it to be his wife's property and business, did not care about it, and did not wish to be bothered with the details of any transactions concerning it. He knew in late 1991 that Mrs. Pretty was putting the property on the market, was aware in 1995 of the purchase and sale agreement with White, knew from his wife before the settlement documents were signed of her efforts to reach an agreement concerning the disputed way, was aware of the settlement documents and did not object to them, and fully acquiesced in the settlement with the trustees. Similarly, he was aware of the March, 1996, closing on the sale to White but neither objected to the sale nor chose to take part in the closing. Given this, the judge determined that Mr. Pretty was estopped from claiming any ownership interest in the Pretty parcel against either the trustees or White. We agree.

The Whites contend that the judge incorrectly relied in this regard on two cases, *Looney* v. *Trimount Theatres, Inc.,* 282 Mass. 275 (1933), and *Vincent* v. *Plecker,* 319 Mass. 560 (1946), when the more recent case of *Patel* v. *Planning Bd. of N. An-*

*dover*, 27 Mass. App. Ct. 477 (1989), suggests a different result. *Patel*, however, does not control the outcome because the issue in *Patel* was whether any claimed easement rights were created by estoppel, while the question here is whether Mr. Pretty is estopped from claiming to retain an easement right that was otherwise extinguished by Mrs. Pretty's settlement with the trustees. It is well to note that our concern in *Patel* was that "recognition of 'easements by estoppel' would detract from the integrity and reliability of land records." *Id.* at 482. This concern is of little moment when dealing with the extinguishment of claimed easement rights because, in such cases, subsequent purchasers of servient estates would not be faced with the assertion against them of easement rights that are not evident from land records. *Looney* and *Vincent* are therefore still apposite.

In *Looney*, 282 Mass. at 277-278, the court held that, notwithstanding the long-held principle that "[i]f a tenant fails to remove trade fixtures during his term . . . the tenant cannot thereafter claim the fixtures as against the owner of the realty," where a landlord's agent had represented to a prospective tenant that fixtures were personal property belonging to a third party, and the tenant, relying on the representations, had purchased them from the third party, the landlord was thereafter estopped from claiming that the fixtures were part of the real property. The court noted that, "while the doctrine of estoppel in pais rests upon the ground of fraud, it is not essential that the representations or conduct giving rise to its application should be fraudulent in the strictly legal significance of that term, or with intent to mislead or deceive; the test appears to be whether in all the circumstances of the case conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct . . . ." *Id.* at 278 (citations omitted).

The rationale of *Looney* and *Vincent*[7] supports the proposition that one may not knowingly stand by and allow one's land to

[7]In *Vincent*, the defendant pointed out the boundaries of two neighboring lots to the plaintiff after he told her of his intention to purchase them. The plaintiff purchased the lots that same day, but obtained faulty title, and some four years later the defendant purchased the lots herself. The plaintiff claimed against the defendant on an estoppel theory. The court stated in dictum that "[i]f [the defendant] had owned the two lots in question, and had knowingly

be sold without asserting one's own title, yet thereafter assert an ownership interest against the purchaser. Here, Mr. Pretty stood by and knowingly allowed his wife to settle the disputed easement claim. Just as in *Looney*, Mr. Pretty is bound by Mrs. Pretty's actions and representations concerning the Pretty parcel.[8] We discern no error in the judge's ruling that Mr. Pretty was estopped thereafter from asserting such easement claim against the trustees.[9]

2. *Whether the settlement agreement binds the Whites.* The

permitted the plaintiff to buy them from [a third party], without disclosing her own title, doubtless she would be estopped to set up her title against [the plaintiff]." *Vincent*, 319 Mass. at 561, citing *Looney*, *supra*. (The court found no estoppel because the defendant did not have title when the plaintiff made his purchase.)

[8]Mr. Pretty's conduct amounted to a delegation of authority to Mrs. Pretty to act as his agent with respect to matters concerning the Pretty parcel. It is well established that one spouse may act as the agent of the other. *Fennell* v. *Wyzik*, 12 Mass. App. Ct. 909, 910 (1981), and cases cited. The existence of such an agency relationship may be established by showing that the wife "was acting in [the husband's] behalf and for [his] benefit with [his] consent and knowledge or that upon learning of [her] conduct [he] adopted and ratified it." *Ibid.*, quoting from *Gordon* v. *O'Brien*, 320 Mass. 739, 741 (1947). The judge's findings, described in the text, *supra*, demonstrate that Mr. Pretty knew about and consented to Mrs. Pretty's actions and that he adopted and ratified his wife's actions with respect to the Pretty parcel. Moreover, the judge found that the Prettys never answered the trustees' complaint on their own behalf; for Mr. Pretty, this amounted to a failure to repudiate Mrs. Pretty's actions in conveying the easement rights to the trustees. The judge's finding that Mr. Pretty did not object to the receipt of the proceeds from the sale of the parcel being placed in a bank account bearing his name and that of his wife, as well as his willingness to sign the confirmatory deed to the Whites, are further evidence of the authority he vested in Mrs. Pretty with respect to all matters concerning the Pretty parcel.

[9]*Dalessio* v. *Baggia*, 57 Mass. App. Ct. 468 (2003), cited by the Whites in a letter to our court pursuant to Mass.R.A.P. 16(l), as amended, 386 Mass. 1247 (1982), is not to the contrary. *Dalessio* concerned an estoppel by deed, which "occurs when . . . the grantor conveys property by deed which, unknown to the grantee, the grantor does not own at the time of the conveyance." *Id.* at 469-470 (citation omitted). In *Dalessio*, the grantor did not own the property in question when conveying it to the plaintiff's predecessor in title. At that time, the property was owned by a husband and wife as tenants by the entirety; the grantor, however, was the husband acting solely in his capacity as a trustee. In contrast, Mrs. Pretty did own the interests she conveyed, as a joint tenant. The issue before us, not present in *Dalessio*, see *id.* at 469 n.2, is whether Mrs. Pretty's actions were binding on her husband. Moreover, to the extent *Dalessio* may be viewed as at all relevant, it is distinguishable because, inter alia, there we concluded the defendant had no notice of the prior convey-

Whites maintain that even if they did not succeed to Mr. Pretty's interest in the claimed easement, they are nevertheless not bound by the settlement that Mrs. Pretty reached with the trustees. In so arguing, the Whites focus solely upon Mrs. Pretty's March, 1996, conveyance to White, contending that only actual notice of the December, 1995, release deed or some functional equivalent would bind them to the settlement and that White did not have such actual notice prior to the March, 1996, closing.[10]

Because the Pretty parcel is unregistered land, the recording statute, G. L. c. 183, rather than the land registration act, G. L. c. 185, §§ 26 et seq., governs whether White was bound by the settlement. Section 4 of the recording statute provides in pertinent part that:

> "A conveyance of an estate in fee simple, fee tail or for life, or a lease for more than seven years from the making thereof, or an assignment of rents or profits from an estate or lease, shall not be valid as against any person, except the grantor or lessor, . . . and persons having actual notice of it, unless it, or an office copy . . . is recorded in the registry of deeds for the county or district in which the land to which it relates lies."

G. L. c. 183, § 4, as amended through St. 1986, c. 557, § 163. It is undisputed that the December, 1995, settlement documents were not of record when White took title in March, 1996. Whether he is nonetheless bound by the conveyance that the settlement effectuated depends upon whether or not he had

---

ance, while here we conclude that White had actual notice of the conveyance to the trustees. See part 2, *infra*.

[10]The Whites do not address in this regard their subsequent receipt of a confirmatory deed signed by both Mr. and Mrs. Pretty. By the time they received that confirmatory deed in November, 1996, of course, the December, 1995, documents effectuating settlement of the easement dispute had been registered and recorded (both in July, 1996). In other words, the Whites rely on the confirmatory deed for their contention that they succeeded to Mr. Pretty's retained claim of easement rights, but at the same time think that confirmatory deed of no consequence in determining whether they were bound by what was of record when they accepted it. We do not dwell on this curiosity, however, because the evidence of record supports the judge's finding that White had actual notice of the settlement agreement prior to the March, 1996, closing.

actual notice of it. Reduced to essentials, White's contention that he is not bound depends upon the interpretation he urges of two statutory terms: "conveyance" and "actual notice."

a. *"Conveyance."* White urges that the conveyance here be viewed as strictly coextensive with the December, 1995, release deed executed by Mrs. Pretty or, conceivably, with some other document on record in the Pretty parcel registration case which might have established that the claimed appurtenant easement over the disputed way had been terminated. White argues that since the release deed was plainly not of record as of the March, 1996, closing; since there was no evidence that he had any knowledge of the release deed prior to the March, 1996, closing; and, finally, since there was no evidence of any document on record in the registration case reflecting the termination of the claimed easement, it follows that there was no conveyance of which he had, or could have had, actual notice. Otherwise put, even if he had become aware that a settlement had been reached between the trustees and Mrs. Pretty, the undocumented and unrecorded settlement is not, White contends, a conveyance of which he might have actual notice.[11]

The trial judge (correctly, we think) concluded on the basis of the credible evidence and relevant case law that an enforceable settlement existed well before the execution of the December, 1995, settlement documents. He determined that the parties in 1991 had agreed to a settlement containing all material terms that were later reduced to writing, and that the settlement was reported in 1993 to the Land Court in connection with the registration case. The December, 1995, settlement documents effectuated the already enforceable settlement which called for, inter alia, the termination of the claim of an appurtenant easement over the disputed way in favor of the Pretty parcel. Had those documents not been executed, specific performance necessary to effectuate the settlement, including execution of the

---

[11]White calls our attention to the fact that there can be no conveyance of registered land until the occurrence of the legally operative act of registration, G. L. c. 185, §§ 57-63, but, we note, he offers no cases that apply similar strictures to the word "conveyance" in G. L. c. 183, § 4. Moreover, as we discuss *infra*, there are instances when unregistered interests bind even the purchasers of registered land.

release deed, could have been ordered. In these circumstances, then, we think that even if the enforceable settlement agreement itself were not sufficiently a conveyance within the meaning of G. L. c. 183, § 4, knowledge of its existence was tantamount to notice of the documents necessary to effectuate the conveyance called for in the settlement.

b. *"Actual notice."* White also contends that he did not have "actual notice" of the subject conveyance because not only did he not have intelligible information as to the existence of the December, 1995, release deed or of any documents on record in the Pretty parcel registration case terminating the Pretty claim to an appurtenant easement, he did not have intelligible information before the March, 1996, closing as to the terms of the settlement agreement between Mrs. Pretty and the trustees. Actual notice is a question of fact, *McCarthy* v. *Lane*, 301 Mass. 125, 128 (1938), and while White does suggest that there was no evidence to support the determination that he had actual notice of the settlement agreement, he also and more seriously contends that the judge misconstrued the actual notice standard.

The statutory term has been discussed in a number of cases involving unregistered land, as here. "Actual notice" can be satisfied by "[s]omething less than positive personal knowledge of the fact of the conveyance." *Curtis* v. *Mundy*, 3 Met. 405, 407 (1841). It does not require notice "by actual exhibition of the deed. Intelligible information of a fact, either verbally or in writing, and coming from a source which a party ought to give heed to, is generally considered as notice of it . . . ." *George* v. *Kent*, 7 Allen 16, 18 (1863). Accord *White* v. *Foster*, 102 Mass. 375, 380 (1869). The term is to be construed with "considerable strictness" and mere "[k]nowledge of facts which would ordinarily put a party upon inquiry is not enough." *Tramontozzi* v. *D'Amicis*, 344 Mass. 514, 517 (1962), quoting from *McCarthy* v. *Lane*, 301 Mass. at 128. Hence, where there was reference to an unrecorded mortgage in a probate inventory, but no evidence that the buyer knew of such reference, "[t]he mere existence of such reference cannot constitute 'actual notice'

within the meaning of the recording statute." *Tramontozzi* v. *D'Amicis, supra.*[12]

Other cases called to our attention affect registered land and are, to that extent, inapposite except as they shed light upon the recording statute's "actual notice" standard. In registered land matters, of course, the holder of a certificate of title taken "for value and in good faith" holds "free from all encumbrances except those noted on the certificate." G. L. c. 185, § 46, as amended by St. 1981, c. 658, § 26. As the court observed in *Jackson* v. *Knott,* 418 Mass. 704, 711 (1994),

> "If an easement is not expressly described on a certificate of title, an owner, in limited situations, might take his property subject to an easement at the time of purchase: (1) if there were facts described on his certificate of title which would prompt a reasonable purchaser to investigate further other certificates of title, documents, or plans in the registration system; or (2) if the purchaser has actual knowledge of a prior unregistered interest."

The latter exception, derived from the "actual notice" standard applicable to unregistered land, was apparently first applied to registered land in *Killam* v. *March,* 316 Mass. 646 (1944), where the court held that the purchasers of a registered land parcel took subject to an unregistered lease of which they had actual notice by virtue of a reference made to that lease in the purchase and sale agreement. The court noted that an exception of this nature had been engrafted upon the earliest recording act after the colonial period and was later put in statu-

---

[12]Similarly, where there was no evidence that certain junior lienholders had notice that the first mortgagee's release of a buildable lot was the result of a mutual mistake of fact on the part of the mortgagor and the first mortgagee as to which of two lots would be built upon, the junior lienholders were not bound by that mistake of fact. *General Builders Supply Co.* v. *Arlington Co-op. Bank,* 359 Mass. 691 (1971). Along the same lines is *Richardson* v. *Lee Realty Corp.,* 364 Mass. 632 (1974), where the buyer at a sheriff's sale did not have actual notice of the heirs' interest in certain real property. While there was some information in the registry of probate about possible improprieties by the executor which might have invalidated a sheriff's sale, those matters of record were too ambiguous either to create a duty of inquiry or to constitute notice of any defect in the circumstances leading to the sheriff's sale or of any violation of the executor's fiduciary responsibility. *Id.* at 636-637.

tory form, and that it continues to appear in G. L. c. 183, § 4. Although not made explicit in the land registration statute, that statute protects certificate holders who purchase registered land "for value and in good faith." The *Killam* court stated at 651:

> "Although there are many differences between the two systems it is inconceivable that circumstances that would amount to bad faith with respect to unregistered land, namely, acquiring title with notice of an unrecorded interest, would constitute good faith in the case of registered land."

See *Feldman* v. *Souza*, 27 Mass. App. Ct. 1142, 1144 (1989) (where easement was registered and noted on neighbor's transfer certificate of title, and, before taking their own certificate of title, buyers had been forewarned of their neighbor's claimed easement and active exercise of such claimed interest, these facts and a Land Court plan "were sufficient to cause the [buyers] to inspect the records of the certificate of title to the [neighbor]. Such an investigation was hardly a herculean task and the [buyers] cannot claim to be in good faith through having adopted a 'hear no evil, see no evil' approach to the matter"). See also *Wild* v. *Constantini*, 415 Mass. 663 (1993) (actual notice exception applicable where owner received original decree of registration that did not unambiguously show an encumbrance, but owner had actual notice by virtue of his predecessor trustees' knowledge). Indeed, in *Wild*, the court noted that, far from the actual notice requirement casting a cloud on registered titles, "the *Killam* rule has served to integrate fairness and justice into a system designed to promote certainty of title at the expense, in some instances, of equity." *Id.* at 669. For instances where the evidence of actual notice of the encumbrance was found wanting, see *Popponesset Beach Assn.* v. *Marchillo*, 39 Mass. App. Ct. 586, 587-590 (1996); *Sandwich* v. *Panciocco*, 48 Mass. App. Ct. 556 (2000).

Here, the judge determined on what we deem sufficient evidence that when White took title in March, 1996, he knew of the settlement agreement between Mrs. Pretty and the trustees even if he did not know of the December, 1995, documents effectuating that settlement. White spoke with Mrs. Pretty's lawyer in November, 1995, and discussed with him the particulars of the 1994 letter from the Land Court that White

had in hand. That letter detailed the action items that needed to be completed before the registration process for the Pretty parcel could be finalized, including the need for documents effectuating Mrs. Pretty's settlement with the trustees. Mrs. Pretty's lawyer assured White that that settlement was "basically a done deal." After this conversation, White spoke with the selling broker, who made note of the fact that White knew about the easement. The foregoing permits the inference that White at the time of the March, 1996, closing knew of the settlement agreement that settled the disputed easement claims. Based on the cases we have discussed, we are satisfied that White took title having intelligible verbal and written information as to the existence of the settlement agreement. He had, in other words, actual notice of the unrecorded interest, i.e., the enforceable settlement agreement whose effectuation would entail recordable instruments such as the release deed. What White knew about the settlement agreement, moreover, was specific and unambiguous enough to trigger a duty in him to inquire about whether it had been fully effectuated. Because of what he in fact knew, he was not in a position to maintain "a 'hear no evil, see no evil' approach to the matter." *Feldman* v. *Souza*, 27 Mass. App. Ct. at 1144. This is particularly so when, in addition to the foregoing conversations which apprised him of the settlement agreement, he also knew of the pending registration case and that it would determine the particulars of the title he would take.

3. *Trustees' notice of White's interest.* The Whites complain in a cursory manner and on their own view of the evidence that the judge ignored evidence that the trustees had actual notice of White's interest in the easement when they accepted the release deed. The Whites maintain that such actual notice, coupled with other evidence that the judge ignored as to the trustees' purportedly inequitable conduct in expediting Mrs. Pretty's release deed before White could close on the purchase, requires a ruling that the trustees have no entitlement to Mrs. Pretty's easement rights. The judge, however, correctly focused on whether White, and not the trustees, had notice, for the issue was whether White was bound by the settlement and this depends on the notice White had and not on what knowledge or notice the

trustees had. Further, we discern no abuse of discretion in the judge's fact finding or in his application of legal and equitable standards.

4. *Trustees' right to enforce the settlement.* Lastly, the Whites argue that the trustees waived their right to enforce the 1991 settlement by revoking their withdrawal of appearance in the registration case. This argument is without merit. The trustees' revocation of their withdrawal in the registration case was prompted solely by the threat that the consideration offered by Mrs. Pretty — release of the claim to an appurtenant easement in favor of the Pretty parcel — would be nullified if the trustees were not to prevail in their action seeking a declaration that the settlement is valid and enforceable.[13] Had the trustees not prevailed, they would have been entitled to rescind the settlement and seek enforcement of any rights they relinquished. See *Bellefeuille* v. *Medeiros*, 335 Mass. 262, 266 (1957). There was no waiver.

*Judgment affirmed.*

---

[13] As alternative relief, the trustees sought a declaration that the 1991 settlement is null and void.