# Commonwealth Electric Company[1] *vs.* Leslie H. MacCardell.

No. 05-P-625.

Suffolk. March 14, 2006. - June 28, 2006.

Present: Laurence, Berry, & Doerfer, JJ.

Further appellate review granted, 447 Mass. 1110 (2006).

*Electric Company. Real Property,* Certificate of title, Registered land: easement.

A Land Court judge properly ruled that the plaintiff electric company did not have an easement over the defendant's land because it had not presented any evidence that the defendant had actual knowledge of its alleged easement — which was not mentioned in the defendant's certificate of title — at the time of purchase, and constructive or presumptive knowledge was not sufficient to fulfil the plaintiff's burden of proof. [648-653]

Civil action commenced in the Land Court Department on September 23, 2002.

The case was heard by *Charles W. Trombly*, J.

*Richard M. Serkey* for the plaintiff.

*Kirk Y. Griffin* for the defendant.

*John A. Pike*, for Real Estate Bar Association for Massachusetts & another, amici curiae, submitted a brief.

Laurence, J. What might have been an interesting addition to the growing body of law regarding the extent to which an owner of registered land may be subject to easements (or other encumbrances) not mentioned in her certificate of title turns out to be another procedural casualty of a plaintiff's failure to sustain its burden of proof.

*Background facts.* The Land Court judge found the following undisputed facts. On April 13, 1944, William T. Reagan filed an action in the Land Court Department of the Trial Court, seeking

[1] Doing business as NStar Electric.

to register and confirm title to two parcels of land on Plum Hill Avenue in Duxbury. The plan divided the property into two lots. The smaller lot, lot 1, was located on the north side of Plum Hill Avenue. The larger lot, lot 2, was located on the south side.

On October 25, 1944, the Land Court entered a decree registering and confirming title of lots 1 and 2 in the name of Reagan. After due proceedings, the Plymouth Registry District of the Land Court issued a certificate of title to Reagan pursuant to the decree of registration. Both the decree and the certificate contain the following language: "Said *Lot 2* [emphasis supplied] is subject to pole easements as set forth in a deed given by Thomas Murray to the Plymouth County Electric Co., dated June 5, 1936, duly recorded in Book 1708, Page 519."[2]

The defendant, Leslie H. MacCardell, owns and resides on lot 1. There currently exist poles on lot 1 that are approximately the same height as her home, bearing wires and electrical apparatus that provide electricity to her home as well as to the home of Alec and Leah Petro on an adjacent lot. These poles were present on lot 1 at the time MacCardell purchased it in 1977. Neither MacCardell's certificate of title nor that of the Petros makes any reference to the poles or the easement claimed by NStar.

The current dispute arose when the Petros requested that NStar increase the level of electric service to their home. NStar decided that it might need to install a transformer on one of the poles located on MacCardell's property in order to satisfy the Petros' request. In the process of searching the records, NStar discovered that the registration certificate for lot 1 did not list an easement in NStar's favor, although the certificate for lot 2 did.

NStar thereupon brought this action, pursuant to G. L. c. 185, § 114, seeking to have MacCardell's certificate amended by noting on its encumbrance sheet that lot 1 is subject to an easement in NStar's favor. NStar argued that the 1944 registration decree inadvertently imposed the easement on the wrong lot, lot

[2]The plaintiff, Commonwealth Electric Company, doing business as NStar Electric, is successor in interest to the Plymouth County Electric Company. We refer to the entity as NStar.

2, instead of lot 1. MacCardell countered that NStar has no easement burdening her land, and claimed that acknowledging such an easement would "impair" her title. After a hearing held on the basis of documentary evidence and arguments of counsel, with no witness testimony, a Land Court judge ruled in favor of MacCardell, finding that she had purchased lot 1 "for value and in good faith," and holding that NStar was not entitled to an easement because it had not presented any evidence that Mac-Cardell had actual knowledge of its alleged easement over her land at the time she purchased lot 1. The judge also denied NStar's motion to alter or amend the judgment pursuant to Mass.R.Civ.P. 59, 365 Mass 827 (1974). On NStar's appeal, we affirm.

*Discussion.* The statutory mechanism for amending a certificate of title is provided in G. L. c. 185, § 114, as amended by St. 1996, c. 481, § 20, which states in relevant part, "No . . . amendment shall be made upon the registration book after the entry of a certificate of title . . . except by order of the court. A registered owner or other person in interest may apply by motion to the court upon the ground that registered interests of any description . . . have terminated . . . or upon any other reasonable ground; and the court may hear and determine the motion after notice to all parties in interest."

It is a fundamental principle of our land registration system that "the holder of a certificate of title taken 'for value and in good faith' holds 'free from all encumbrances except those noted on the certificate.' G. L. c. 185, § 46, as amended by St. 1981, c. 658, § 26." *Emmons* v. *White*, 58 Mass. App. Ct. 54, 66 (2003). However, in *Jackson* v. *Knott*, 418 Mass. 704, 710-711 (1994), the Supreme Judicial Court set forth two "recognized exceptions" to this rule. "If an easement is not expressly described on a certificate of title, an owner, in limited situations, might take his property subject to an easement at the time of purchase: (1) if there were facts described on his certificate of title which would prompt a reasonable purchaser to investigate further other certificates of title, documents, or plans in the registration system; or (2) if the purchaser has actual knowledge of a prior unregistered interest." *Id.* at 711.

We are concerned in this case only with the "actual

knowledge" exception. The requirement of actual knowledge that underlies this exception "serve[s] to integrate fairness and justice into a system designed to promote certainty of title at the expense, in some instances, of equity." *Wild* v. *Constantini*, 415 Mass. 663, 669 (1993). The party claiming that a registered owner had actual knowledge of a prior unregistered easement (or other interest) has the burden of proving that actual knowledge by a preponderance of the evidence. See *Sandwich* v. *Panciocco*, 48 Mass. App. Ct. 556, 561 (2000).

NStar — which neither deposed nor questioned MacCardell at the hearing — has presented *no* proof of her *actual* knowledge of its claimed easement. Instead, it relies entirely on attributing constructive knowledge to her, based on the presence of the utility poles and lines running through her property. It asserts that those structures are so obviously visible that "it is inconceivable" MacCardell did not have actual knowledge of its unrecorded interest, additionally noting that MacCardell "must have relied on its existence" since she was the primary beneficiary of the poles and wires as the source of her electricity, with monthly confirmations when she paid her electric bill to NStar.

NStar's position is not the law, nor is the sole authority in its brief,[3] *Feldman* v. *Souza*, 27 Mass. App. Ct. 1142 (1989), applicable, much less "controlling," as NStar contends. In *Feldman*, the plaintiffs requested (under G. L. c. 185, § 114) that an

[3]By letter dated August 5, 2005, pursuant to Mass.R.A.P. 16(1), as amended, 386 Mass. 1247 (1982), NStar brought to our attention *Doyle* v. *Commonwealth*, 444 Mass. 686 (2005). Since no reasons were provided in that letter for the relevance of the cited case, except for a sweeping reference to the entire argument section of its brief, NStar's submission runs afoul of that rule. Were we to consider the letter, we might speculate that NStar may be relying on the generalization in that case that the "exceptions [outlined in *Jackson* v. *Knott*, 418 Mass. at 711,] prevent the protection of a purchaser who knows or should have known about an existing encumbrance on his or her land, which was not reflected on the certificate of title. Such a purchaser cannot be said to have taken the land 'in good faith.' " *Doyle* v. *Commonwealth*, 444 Mass. at 693. That generalization, however, would not assist NStar. On the facts of that case (involving the authority of a Land Court judge to invalidate, sua sponte, a transfer certificate of title that was defective on its face as well as by reference to the original plan and therefore issued in error) the observation was not only dictum, but also divergent from the decisions ruling on the "actual knowledge" exception.

easement for a right of way in their favor over the defendants' land be placed on the defendants' certificate of title. *Id.* at 1143. Although the easement was registered on the plaintiffs' certificate of title, it did not appear on the defendants' certificate. *Ibid.* However, the plaintiffs had explicitly warned the defendants, before the defendants purchased, that they had an easement over the property that the defendants were considering (an easement that the plaintiffs, to the defendants' knowledge, were actively exercising). *Ibid.* Moreover, on the original registration plan for the locus and all subsequent revisions thereof, there appeared a strip of land that looked like a right of way precisely where the plaintiffs claimed their easement. *Ibid.* See *Jackson* v. *Knott*, 418 Mass. at 711 ("If a plan is referred to in the certificate of title, the purchaser would be expected to review that plan"). The Appeals Court affirmed the trial court's judgment for the plaintiffs because the defendants had actual notice[4] of the right of way, reasoning that the plaintiffs' warnings and the existence of the plan imposed a duty upon the defendants to inspect the records of the plaintiffs' certificate of title. *Feldman* v. *Souza*, 27 Mass. App. Ct. at 1144. Because of such actual notice that an easement existed, the defendants' " 'hear no evil, see no evil' approach to the matter" deprived them of the "good faith" purchaser status[5] required to hold title free from encumbrances not noted on their certificate. *Ibid.*

Unlike *Feldman* v. *Souza*, where the landowner was made explicitly aware of the easement, MacCardell received no such express forewarning before purchasing her property. Compare *Jackson* v. *Knott*, 418 Mass. at 712, 713-714 (defendants had no actual knowledge of the existence of an easement for a right of way over a path to the beach, and there was no ascertainable

---

[4]"Actual notice" and "actual knowledge" are functional equivalents with respect to application of the second *Jackson* v. *Knott* exception. See *Jackson* v. *Knott*, 418 Mass. at 711, 713 n.6, 714 n.7, and cases cited; *Emmons* v. *White*, 58 Mass. App. Ct. at 65-67.

[5]In *Feldman* v. *Souza*, 27 Mass. App. Ct. at 1143-1144, the defendants' inquiry of the person from whom they proposed to purchase (who had been one of the cograntors to the plaintiffs years earlier), whether there was any such easement as that claimed by the plaintiffs (the defendants were told there was none), was insufficient to restore their good faith status when they had actual notice of the easement that was in fact registered and noted on the plaintiffs' certificate of title.

documentary proof of such an easement, the record disclosing only that the defendants had been aware of the use of the path by neighbors as a permissive use); *Calci* v. *Reitano, ante* 245, 247-250 (2006) (no actual knowledge of an easement where no express warning or claim of easement had been given and no written documentation of the easement existed in the chain of title that would have revealed the encumbrance). Contrast *Killam* v. *March*, 316 Mass. 646, 652 (1944) (actual notice existed where the buyers of registered land were informed of encumbrances by their purchase and sale agreement); *Wild* v. *Constantini*, 415 Mass. at 665 (actual notice where the petitioners for registration conceded, in an affidavit, their knowledge of the encumbrance at the time of filing their petition); *Emmons* v. *White*, 58 Mass. App. Ct. at 67-68 (actual notice where a landowner had written and verbal notice of a settlement agreement that acknowledged the encumbrance); *One-O-Six Realty, Inc.* v. *Quinn, ante* 149, 154 (2006) (actual knowledge existed where the defendant landowner was advised by his attorney prior to purchase of the existence of a deed in the chain of title that created an unregistered easement over the defendant's land).

NStar's attempt to satisfy its burden of proof as to Mac-Cardell's actual knowledge by simply reiterating that the presence of the poles and wiring had to be deemed sufficient to impute such knowledge to MacCardell fails.[6] "To fulfil the actual notice exception . . . , it is not enough that the holder of

---

[6]The brief filed on NStar's behalf by amici curiae, the Real Estate Bar Association for Massachusetts and the Abstract Club, does not advance NStar's position. It relies on overly broad language in *Feldman* v. *Souza*, 27 Mass. App. Ct. at 1143, that summarized the cases in the area to that point, by generalizing that a "purchaser of registered land [who] has notice of the existence of a way over his estate . . . takes the land subject to such an easement, even if it is not mentioned as an encumbrance in the grantor's certificate of title." Such reliance is misplaced in view of the holding in that case (which was that the landowner had actual notice of the claim of easement by having been specifically so informed by one actively exercising his easement rights, which triggered a duty to inspect the registration records that would have revealed that easement, *id.* at 1144). To the contrary, the cases have determined that mere awareness of the existence of a way and of others' use of it is not sufficient to constitute actual knowledge. See *Tetrault* v. *Bruscoe*, 398 Mass. 454, 462 n.10 (1986); *Jackson* v. *Knott*, 418 Mass. at 713-714 & n.7. Other than that single legal argument, the amici's brief shares with NStar incredulity

registered title know that the land has been used in a certain way that might indicate an easement, because this could be merely a permissive or perhaps adverse use, which specifically does not give right to an easement under G. L. c. 185, § 53. See *Jackson* v. *Knott*, 418 Mass. at 713. Rather there must be actual knowledge of prior documents, registered or unregistered, that create an easement over the disputed parcel." *Calci* v. *Reitano*, *supra* at 249-250. Cf. *Selectmen of Hanson* v. *Lindsay*, 444 Mass. 502, 509-510 (2005) ("One claiming that another is not a bona fide purchaser has the burden of proof. . . . When dealing with an unrecorded instrument, actual notice is required, and that term has been strictly construed. . . . [A]ctual knowledge or notice of [an unrecorded deed must be proved].' . . . 'Knowledge of facts which would ordinarily put a party upon inquiry [notice] is not enough' ") (citations omitted); G. L. c. 183, § 4 (unrecorded conveyance is invalid except against, inter alia, "persons having actual notice of it").

Here, NStar did nothing more than rely on the mere presence of the poles and wiring to meet its burden of proving Mac-Cardell's actual knowledge of its easement. It did not depose or call MacCardell to testify about any knowledge or notice she may have had at the relevant time, i.e., when she purchased lot 1. See *Sandwich* v. *Panciocco*, 48 Mass. App. Ct. at 561. Indeed, NStar did not establish that MacCardell even saw the poles and wiring at that time. The assumed fact that MacCardell used electricity in her home did not prove that she knew that its source was from the poles on her property, or knew anything about the provenance of the poles and wiring.[7] Finally, there was no evidence presented, in the form of expert testimony,

that the judge did not hold that MacCardell's awareness of the existence of the poles and wires must be deemed to amount to actual knowledge of an encumbrance as matter of law — a conclusion that would be unsupported by the authorities.

[7]If anything, the fact that MacCardell benefited from the utility lines supported the inference that her predecessor had permitted NStar to install the poles on the property. See *Calci* v. *Reitano*, *ante* 245, 249-250 (2006) (without notice of an easement, use of a right of way may have been permissive). Contrast *Feldman* v. *Souza*, 27 Mass. App. Ct. at 1143, 1144 (verbal warning and Land Court plans indicated to a landowner that a right of way was not permissive).

concerning such matters as the customary relationship between electric utilities and landowners whose property the utilities' equipment traverses; how, if at all, a competent title examiner representing MacCardell when she was purchasing lot 1 could have discovered the utility easement; or whether the existence of such phenomena as poles and wires triggered a duty of further inquiry as to the possibility of an easement.[8]

The purpose of the registration system is and has always been to promote certainty of title and to "protect the transferee of a registered title." *Wild* v. *Constantini*, 415 Mass. at 668, quoting from *Kozdras* v. *Land/Vest Properties, Inc.*, 382 Mass. 34, 44 (1980). See *Tyler* v. *Judges of the Ct. of Registration*, 175 Mass. 71, 73 (1900); *McMullen* v. *Porch*, 286 Mass. 383, 388 (1934); *Morehardt* v. *Dearborn*, 313 Mass. 40, 47 (1943); *State St. Bank & Trust Co.* v. *Beale*, 353 Mass. 103, 107 (1967); *McDonnell* v. *Quirk*, 22 Mass. App. Ct. 126, 129, (1986); *Feinzig* v. *Ficksman*, 42 Mass. App. Ct. 113, 116 (1997). "The finality and unassailability of registered title is a cornerstone of the registered land system." *McDonnell* v. *Quirk, supra* at 129. Requiring clear proof of actual knowledge of the existence of a documented but unregistered encumbrance — not constructive or presumptive knowledge — is necessary to buttress that cornerstone. Allowing NStar the relief it sought on its inadequate factual and legal showing in this case would only create further uncertainty in titles and impairment of the integrity of the land registration system.

*Judgment affirmed.*

---

[8]The amici curiae assert that a duty of inquiry in such circumstances is recognized as good real estate title practice in Massachusetts but cite only one conveyancer's opinion for that proposition and present no authority establishing the professionally or legally mandatory nature of such a duty.