NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1034

SETH MCCLENNEN & another[1]

vs.

ROEL C. ASTACAAN & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendants, Roel Astacaan and Tracy S. Thomas-Astacaan, appeal from a summary judgment entered in the Land Court declaring that the Astacaans have no right to pass over any portion of the property of the plaintiffs, Seth McClennen and Martha C. Wu, and enjoining the defendants from entering the plaintiffs' property. The properties at issue are registered land and while we affirm so much of the judgment that concludes that the registration materials contained in the record do not show that the defendants have an easement over the plaintiffs' property, we conclude that discovery was erroneously restricted

---

[1] Martha C. Wu.

[2] Tracy S. Thomas-Astacaan.

on the issue of whether the plaintiffs had actual knowledge of an unregistered document encumbering their property with an easement. Accordingly, we remand the matter for the limited purpose of resolving that issue.

Background. We begin by reviewing the development of the parties' properties to the extent necessary to address the defendants' arguments, understanding that the parties are familiar with the facts. The parties' properties were once part of a larger parcel of land in the town of Orleans that abutted the waters of Pleasant Bay and was registered in 1921. In 1956, Delbert and Vera Johnson purchased lot 1A on land registration plan no. 7347B, and in 1957, the Johnsons transferred a one-half interest in lot 1A to Ernest Nickerson.

In 1957, the Johnsons and Nickerson subdivided lot 1A into lot 5, which includes what is now the defendants' property, and lot 6, which includes what is now the plaintiffs' property.[3] In February 1957, Nickerson transferred his interest in lot 5 to the Johnsons and the Johnsons transferred their interest in lot 6 to Nickerson and his wife, Shirley.[4] Thereafter the Johnsons

_____

[3] Lots 5 and 6 run from north to south and are divided vertically such that the eastern boundary of lot 5 abuts the western boundary of lot 6. Both lots abut Pleasant Bay on their southern boundaries. Id.

[4] Both deeds reserved a right of way over Towhee Lane for lots 5 and 6, in common with others.

2

subdivided lot 5, and some eleven years later, the Nickersons subdivided lot 6.

In 1957, the Johnsons subdivided lot 5 into lots 7-12 as depicted on plan no. 7347F (1957 plan). In April 1957, the Johnsons conveyed lot 11 (containing the beach) and lot 12 on the 1957 plan to the Corsons (the Corson deed) with the following reservation:

> "[s]ubject to a right in the grantors, their heirs and assigns, in lot 11 . . . to pass and repass between the waters of Pleasant Bay and any or all of the land shown as Lots 5 and 6 on land court plan 7347-E, and to use said Lot 11 as a private beach and recreation area and to erect thereon a pier and boat house."

This language was repeated in a 1961 deed of lot 8. The defendants purchased lot 8 in 2022. Thus, the defendants' property, lot 8, enjoys an easement for access to the beach over lot 11, which abuts lot 8 and includes a path leading to the beach.

In 1968, some eleven years after lots 5 and 6 were subdivided from each other, the Nickersons further subdivided lot 6 into lots as shown in plan no. 7347U (1968 plan). Those lots include lots 123 and 124, of which the plaintiffs obtained ownership in 2017. The deeds for most of the lots subdivided from lot 6 include the "right to use the 12' Foot Path and beach lying westerly of Lot 123 as shown on said plan as lot 124." On the 1968 plan is a forty-foot wide way identified as

3

Whippoorwill Lane, which provides access to several lots. Whippoorwill Lane ends in a cul de sac, from which lot 124 extends to the beach. Lot 124 is a narrow strip leading to, and including, a beach, and is labeled on the 1968 plan "12.00 Wide Foot Path & Drainage Easement."[5] The parties agree that lot 124 is seventeen feet wide; there is nothing to indicate the exact location of the foot path & drainage easement. Lot 124 lies immediately to the east of lot 11, over which the defendants enjoy an easement. The beach depicted on lot 124 on the 1968 plan is immediately adjacent to a beach depicted on lot 11 on the 1957 plan.

The Nickersons proceeded to transfer lots shown on the 1968 plan and for most lots included the "right to use the 12' Foot Path and beach lying westerly of Lot 123 as shown on said plan as lot 124," or other similar descriptions applicable to lot 124.[6]

The plaintiffs' 2017 certificate of title does not state that lot 124 is subject to rights of others over lot 124 -- even

---

[5] Confusingly, the words "12.00 Wide Foot Path & Drainage Easement" are physically positioned on lot 11 (from the 1957 plan), but arrows point the description to the adjacent lot 124.

[6] Nickerson did sell lots 120 and 121 together with a right of way over the "12' Foot path west of lot 124," which would be the strips on lots 8 and 11 on the 1957 plan. We discuss this deed infra.

4

though the Nickersons granted express easements to the owners of several lots depicted in the 1968 plan.

Although there is no dispute that the defendants have an easement over lot 11, they assert that due to dense vegetation and wetlands, the southern end of lot 11 near the beach is impassable and a well-worn path to the beach deviates onto lot 124. While the plaintiffs neither admit nor deny the physical attributes of lot 11, a dispute has arisen over the use of an existing path which lies in part on lot 124; the plaintiffs contend that the defendants have no right to pass over lot 124.

After the plaintiffs filed their complaint, the defendants sought to depose several persons, including plaintiff McClennen, and issued multiple subpoenas seeking documentary evidence of an easement. The plaintiffs filed a motion for a protective order. Concluding that only documents in the registration system were material to the existence of an easement, the judge issued a protective order prohibiting such discovery at least until the determination of whether an easement exists is made.

The Land Court judge granted summary judgment to the plaintiffs, concluding that their certificate of title does not reflect an easement over lot 124 (deriving from lot 6) for the benefit of the defendants' lot 8 (deriving from lot 5), and neither of the exceptions set forth in Jackson v. Knott, 418

5

Mass. 704, 711 (1994), apply to allow recognition of an easement not noted on the certificate of title.

Discussion.  "We review the Land Court judge's summary judgment decision de novo.  Because the judge does not engage in fact finding in ruling on . . . motions for summary judgment, we owe no deference to [her] assessment of the record" (Citation omitted).  Marhefka v. Zoning Bd. of Appeals of Sutton, 79 Mass. App. Ct. 515, 517 (2011).

"The purpose of the registration system is and has always been to promote certainty of title and to 'protect the transferee of a registered title'" (citation omitted).  Commonwealth Elec. Co. v. MacCardell, 66 Mass. App. Ct. 646, 653 (2006), S.C., 450 Mass. 48 (2007)."[H]olders of a certificate of title take 'free from all encumbrances except those noted on the certificate,' [quoting G. L. c. 185, § 46], and G. L. c. 185, § 47 (1992 ed.), expressly provides that, when land is registered, the decree of registration (and subsequent certificate) 'shall set forth . . . all particular . . . easements . . . to which the land or the owner's estate is subject.'"  Jackson, 418 Mass. at 710.  "No easement or other rights may be acquired on registered land 'by prescription or adverse possession [and no] right of way by necessity shall be implied under a conveyance of registered land.'"  Duddy v.

6

<u>Mankewich</u>, 75 Mass. App. Ct. 62, 66 (2009), quoting <u>Jackson</u>, supra.

Here, the certificate of title for the plaintiffs' lot 124 does not note an encumbrance for the benefit of the defendants' lot 8 on the 1957 plan.[7]  And, even assuming that prior to 1957, when the same person owned both properties, that prior owner had in fact been using a pathway that travelled over lot 124 and such use might be considered reasonably necessary for the enjoyment of lot 8, that would not help the defendants.  Generally, no easement by necessity may arise on registered land.  See <u>Duddy</u>, <u>supra</u>.

Exceptions to the general rule, however, were recognized in <u>Jackson</u>, such that an owner might take property subject to an easement not noted on the certificate of title: "(1) if there were facts described on his certificate of title which would prompt a reasonable purchaser to investigate further other certificates of title, documents, or plans in the registration system; or (2) if the purchaser has actual knowledge of a prior unregistered interest."  <u>Jackson</u>, 418 Mass. at 711.

---

[7] Although in the subdivision depicted in the 1968 plan Nickerson expressly granted owners of lots 117, 118, 119, and 122 easements over lot 124, the plaintiffs' certificate of title does not reflect those easements.  For this, among other reasons, we have closely reviewed all of the documents contained in the record from the registration system.

1. *The first Jackson exception.* Applying the first exception, we have carefully reviewed the registration documents and plans contained in the record. As depicted in the 1957 plan subdividing lot 5, the defendants' predecessors in title specifically reserved for the benefit of lot 8 access over lot 11 to reach the beach and to build a boathouse. As depicted in the 1968 plan subdividing lot 6, the plaintiffs' predecessor in title later created an adjacent access for the owners of those lots over the foot path on lot 124 to access the beach. Contrary to the defendants' contention, there was no evidence that there was an intent to grant for the benefit of their lot 8 an easement over lot 6 generally or over the plaintiffs' lot 124, specifically. Although until 1957 lots 5 and 6 were commonly owned, once separated, each owner created separate accesses to adjacent beaches by relying on paths on their own properties. There was no scheme that all of the lots on both plans would have rights over the footpath on lot 124. There were no open-ended ways leading from one plan to the next. Had the owners who subdivided lots 5 and 6 intended that all of the lots would have rights over the same existing footpath, they could have so provided, and the footpath on lot 6 could have been shown on the 1957 plan. It was not. At least for these same reasons, the facts do not give rise to an easement by implication.

Nor was the 1968 plan merely a progression of the development of the whole of lots 5 and 6.  When lots 5 and 6 were developed, which was over a decade apart, they were separately owned; solid lines on the various plans separated the lots; there were no open-ended ways leading from one lot to the other; and the presence of adjacent paths on both lots separated by a solid line belied the inference that they were intended to be jointly used.  Contrast Hickey v. Pathways Ass'n, Inc., 472 Mass. 735, 760 (2015) (examination of Land Court plans revealed open-ended ways leading from the property on one plan to property on next and plans showed network of interconnecting ways, and planned development of other inland lots and their right to use ways was "immediately apparent").

The defendants point for support to the reservation contained in the Johnsons' 1957 deed of lots 11 and 12 to the Corsons.  The defendants essentially contend that this Corson deed shows that the Johnsons and Nickersons intended to grant mutual easements over their properties.  However, at that time, the Johnsons did not own lot 6 and lacked the capacity to burden it with an easement.[8]  See Boudreau v. Coleman, 29 Mass. App. Ct.

---

[8] When Nickerson conveyed lots 120 and 121, he granted a right of way over the "12' foot path and beach lying Westerly of Lot #124 as shown on [the 1968 plan]."  Read literally, this would be an easement over lot 11 and the strip on lot 8 on the 1957 plan.  A number of factors contribute to suggest the grant of rights over a footpath on lot 11 was a drafting error -- the

9

621, 632 (1990) ("Only rights held by grantors at the time of the conveyance may be expressly reserved in a deed . . . they cannot, by reservation, create a new right"). Thus, the Johnsons could not have retained an easement over any portion of lot 6 for the benefit of lot 5.[9]

Even more importantly, the language of the Corson deed reserves rights over lot 11 -- not over lot 6. The plain language of the reservation does not support an interpretation that the Johnsons purported to reserve rights over lot 6 for the benefit of lot 8 through the reservation in the Corson deed. See Trustees of the Beechwood Village Condominium Trust v. USAlliance Fed. Credit Union, 95 Mass. App. Ct. 278, 290 (2019)

---

drafter may have missed that the description "12.00 Foot Path & Drainage Easement," though written on the 1968 plan on lots 8 and 11, have an arrow pointing to lot 124. Moreover, so far as shown on the 1957 and 1968 plans, the strips on lots 8 and 11 are substantially wider than twelve feet, and all other references to the "12.00 Foot Path" are to lot 124.

Even if we were to assume that Nickerson intended to benefit lots 120 and 121 with an easement over lot 11 and the reservation in the Corson deed allowed him to do so, however, we discern nothing in those deeds, that bears on an intention that lot 8 on the 1957 plan would have an easement over lot 124. Because the owners of lots 120 and 121 are not parties to this appeal, we need not definitively decide where their easement is located.

[9] If the evidence otherwise showed an intention to benefit all of the lots on both lots 5 and 6 with easements over lot 124, it may be possible to overlook an aberration in the chronology of conveyances. Cf. Conway v. Caragliano, 102 Mass. App. Ct. 773, 783 n.10 (2023). That is not the case here.

(deed construed according to its plain meaning).  While the language may allow for an interpretation that lot 6 is benefitted by a reserved easement over lot 11, it does not allow for the converse interpretation -- that lot 6 is burdened by a reserved easement.  See n.8, supra.  In other words, even if the Corson deed of lot 11 may be construed to reserve an easement over it for the lots on the 1968 plan, there simply is nothing in the record to suggest the Nickersons intended to grant easements over lot 124 to the owners of lots on the 1957 plan.

It appears here that what was shown to be a clear path to the beach on the 1957 plan does not match the current reality on the ground.  Even if that is the case, it does not give rise to an easement over the plaintiffs' property where nothing in the 1957 or 1968 plans or deeds or related certificates of title in the registration system indicates an intent to grant or reserve an easement for the benefit of the lots on the 1957 plan, and specifically lot 8, to pass over lot 124 on the 1968 plan.  Thus, the first exception does not apply.

2.  The second Jackson exception.  Next, we address the issue of whether the plaintiffs had actual notice of a prior unregistered interest.  "If [the plaintiffs] acquired title with actual knowledge of a prior unregistered interest, they have not satisfied the requirement of good faith set forth in G. L. c. 185, § 46," Jackson, 418 Mass. at 713, and may not "benefit

11

from the protections afforded by the land registration system."

Commonwealth Elec. Co. v. MacCardell, 450 Mass. 48, 51 (2007).

The question is whether either plaintiff, at the time of

purchase, had actual knowledge of a prior unregistered interest.

Jackson, supra.

We have said

"'To fulfil the actual notice exception . . . , it is not
enough that the holder of registered title know that the
land has been used in a certain way that might indicate an
easement, because this could be merely a permissive or
perhaps adverse use, which specifically does not give right
to an easement under G. L. c. 185, § 53. . . . . Rather
there must be actual knowledge of prior documents,
registered or unregistered, that create an easement over
the disputed parcel" (emphasis added) (citation omitted).

Calci v. Reitano, 66 Mass. App. Ct. 245, 249-250 (2006). In

refining the actual knowledge test, the Supreme Judicial Court

has said that "[o]ne way to satisfy the actual knowledge

exception is through 'documentation, whether registered or

unregistered.'" Commonwealth Elec. Co., 450 Mass. at 52,

quoting Calci, supra. "Essentially, the standard for

determining actual knowledge is whether there is '[i]ntelligible

information of a fact, either verbally or in writing,' or in

documentation that can be registered or not." Id., quoting

Emmons v. White, 58 Mass. App. Ct. 54, 65 (2003).

There is evidence in the summary judgment record that

plaintiff Seth McClennen wrote to defendant Tracy Thomas-

Astacaan in successive e-mail messages that "[w]e own the

12

driveway over which you have an easement for your guests to reach the beach"; he had "in the remote past seen [defendants'] easement" and it would "be good for [defendants'] broker to try to find it to clarify"; and "[w]e were informally told by the prior resident of your house that she was allowed to walk down the path."[10]  These verbal assertions regarding registered land, imprecise as to dates either plaintiff may have learned this information, are generally insufficient to encumber registered property without affirmative documentation.  See Feldman v. Souza, 27 Mass. App. Ct 1142 (1989) (verbal forewarning of easement sufficient where easement was also noted on claimant's certificate of title and deed).  However, the judge and the plaintiffs took the position that as a matter of law, only documents contained in the registration system are relevant to the issues in this case, including whether the actual knowledge exception in Jackson applies.  Thus, the judge limited discovery to the records in the registration system.

Our cases make clear that if, at the time the plaintiffs acquired ownership of their property, either plaintiff had actual knowledge of an unregistered document encumbering the property with an easement for the benefit of lot 8, that would satisfy the actual notice exception.  The defendants were

_____

[10] It is unclear whether McClennen may have seen evidence of the defendants' rights over lot 11 rather than over lot 124.

13

entitled to discovery reasonably calculated to lead to "intelligible oral or written information that indicates the existence of an encumbrance or prior unregistered interest." Commonwealth Elec. Co., 450 Mass. at 54, citing Emmons, 58 Mass. App. Ct. at 68. At least some of the defendants' discovery requests were targeted toward such information and the timing and fact of either plaintiff's knowledge of it. We conclude, therefore, that the protective order was overly broad where the judge viewed as relevant only documents contained in the registration system. Because the judge applied the wrong standard, we remand for further consideration of the plaintiffs' motion for a protective order as it relates to the actual knowledge exception articulated in Jackson and its progeny and further proceedings as needed on the actual knowledge exception.[11]

Conclusion. So much of the judgment that concludes that the materials in the registration system do not show that the plaintiffs' property is encumbered by an easement for the

_____

[11] The judge granted, in part, the plaintiffs' motion to strike the affidavit of Tracy Thomas-Astacaan, reasoning that the stricken paragraphs were either not based on personal knowledge, constituted hearsay or legal opinions, or were matters that required an expert opinion. On appeal, the defendants argue that the judge erred in failing to consider the affidavit in the light most favorable to the defendants, the non-moving parties. We discern no merit to their argument.

14

benefit of the defendants' property is affirmed.  We otherwise vacate the judgment for further proceedings consistent with this decision to determine whether either plaintiff had actual knowledge of an unregistered document encumbering lot 124 with an easement for the benefit of lot 8.  We also vacate the order granting the plaintiffs' motion for a protective order to the extent that it prohibits discovery into whether either plaintiff had actual knowledge of an unregistered document encumbering lot 124 with an easement for the benefit of lot 8.  The case is remanded for further proceedings consistent with this decision.

So ordered.

By the Court (Henry, Grant & D'Angelo, JJ.[12]),

Clerk

Entered:  October 10, 2024.

---

[12] The panelists are listed in order of seniority.